MOSES C. GIBSON, Respondent, *v.* ORVILLE H. TOBEY · and HERMAN D. BOOTH, Appellants.

Where upon the sale and delivery of goods the vendor receives from the purchaser the note or bill of a third person, the presumption is that the note or bill was accepted in payment, and satisfaction, and the *onus* is upon the vendor to show that it was not thus received.

Plaintiff sold to defendants a number of hogs for cash on delivery. After the delivery was made and amount of purchase-money ascertained, defendant's agent, who made the purchase, stated he would have to go to the bank (some three miles distant) to get the money, and asked plaintiff which he would prefer, the currency or a draft on New York. Plaintiff chose a draft, and consented to the hogs being loaded on the cars, upon the agreement that the draft should be procured as soon as practicable. The draft was procured and accepted by plaintiff without defendants' indorsement. The draft was dishonored. Plaintiff thereupon tendered the draft to defendants and demanded its amount, and upon refusal brought suit.

*Held*, that there was no waiver of the cash payment by the delivery of the hogs, and the sale was incomplete until the delivery and acceptance of the draft. The presumption of law that the draft was received as payment therefore applied. The action could not be maintained even if it should be held that payment in cash was waived and a credit given, and that the draft was received upon a precedent debt; the facts were conclusive that it was received as payment.

(Submitted November 27th, 1871; decided December 12th, 1871.)

APPEAL from judgment of the General Term of the Supreme Court of the fourth judicial department, affirming

a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought to recover the contract price of a number of hogs alleged to have been sold by plaintiff to defendants.

On the 1st day of November, 1867, at the city of Buffalo, the plaintiff sold and delivered to the defendants a lot of hogs for the sum of $3,408.07, to be paid on delivery. On the delivery of the hogs to them, the defendants' agent sat down and figured up what the hogs came to, and after agreeing upon the amount, told the plaintiff that he would have to go up town and get money to pay for the hogs, and inquired of the plaintiff which he would prefer, the currency or a draft on New York; the plaintiff replied that he would rather have a draft, for he wished to take it home with him; the agent said he would get a draft payable to the plaintiff's order. Defendants' agent asked permission to ship the hogs immediately, which was granted upon the understanding that the draft was to be procured and delivered as soon as possible. The defendants shortly thereafter, and on the same day, procured from Henry J. Shuttleworth, a banker in the city of Buffalo, in good standing, a sight draft for $3,200, bearing date November 1st, 1867, drawn by him upon his bankers in the city of New York, and payable to the order of the plaintiff, and delivered said draft to the plaintiff, and paid the balance of the said price of said hogs in money. There was no agreement that the draft should be taken by the plaintiff at his risk.

The plaintiff resided at Mexico, in the State of Ohio. He left Buffalo on the said first day of November, and reached his place of residence on the evening of the next day, which was Saturday; and on Monday morning, the 4th day of November, 1867, the plaintiff deposited said draft in a bank near his said residence, in which he kept his account; the said bank immediately sent the said draft by mail to New York city for collection; on the 10th day of November, 1867,

the said plaintiff received notice that said draft had been dishonored; the said draft was presented to the drawees for payment on the 6th of November, 1867, and payment refused; on the 4th day of November, 1867, the said Shuttleworth suspended payment, and telegraphed to his bankers in New York city not to pay any drafts drawn by him upon them; at the time of the drawing of said draft said Shuttleworth had funds in the hands of the drawees sufficient to meet the draft. On the 5th day of December, 1867, the plaintiff notified the defendants of the dishonor of the said draft, and subsequently tendered the draft to defendants' agent and demanded the money; this was refused. The plaintiff on the trial offered to surrender the draft to the defendants.

The referee found and decided as matter of law:

1st. That the price of said hogs (to the extent of the amount of said draft beside interest thereon), was unpaid.

2d. That the draft was not a satisfaction of that part of the price of the hogs.

3d. That the plaintiff was entitled to, and he ordered judgment against said defendants for the sum of $3,666.66, and judgment was perfected in accordance therewith.

*George B. Hibbard,* for appellants. The draft was taken in payment and satisfaction of the price of the hogs. (2 Kent's Com., 497, and cases; *Tyler* v. *Freeman,* 3 Cush., 261; *Adams* v. *O'Connor,* 100 Mass., 575; *Palmer* v. *Hand,* 13 Johns., 433; *Noel* v. *Murray,* 13 N. Y., 167; *Whitbeck* v. *Van Ness,* 11 Johns., 408; *Young* v. *Stahelin,* 34 N. Y., 258; *Reed* v. *Cook,* 15 Johns., 241; *St. John* v. *Purdy,* 1 Sandf., 9; *Strong* v. *Hart,* 6 B. & C., 160, 161; 13 E. C. L., 84; *Frisbie* v. *Larned,* 21 Wend., 450; *Stith* v. *Morehouse* and *Darnell* v. *Morehouse,* unreported, reversing *Darnell* v. *Howard,* 36 How., 511.) The findings, as settled in the case, control. (*Hartman* v. *Proudfit,* 6 Bosw., 191.) Had defendants indorsed draft, it would not be presumed to be received as payment. (*Whitbeck* v. *Van Ness,* 11 Johns., 408, 412; *Breed* v. *Cook,* 15 id., 241.) Failure of plaintiff to give

timely notice of non-payment of draft is fatal to his recovery. (*Smith* v. *Mercer*, Eng. L. R., 3 Exch., 51 ; *Woodruff* v. *Bennett*, 1 Cow., 711 ; *Drayton* v. *Hull*, 23 Wend., 345 ; *Denniston* v. *Inbrie*, 3 Wash. C. C. R., 396 ; *Coffer* v. *Powell*, Anth. N. P., 68 ; *Shrimer* v. *Ketler*, 25 Penn., 61.)

*P. G. Parker*, for respondent. The acceptance of a bill or note of a third party is not payment of a debt, unless by agreement of the parties. (*Noel* v. *Murray*, 3 Kern., 167 ; *Gibson* v. *Tobey et al.*, 53 Barb., 190 ; *Darnell* v. *Morehouse*, 36 How. Pr., 511.) The draft was given upon a precedent debt. (*Smith* v. *Lynes et al.*, 1 Seld., 41 ; *Lupin* v. *Marie*, 6 Wend., 77 ; *Chapman* v. *Lathrop*, 6 Cow., 110.) Plaintiff not guilty of laches, in not notifying defendants earlier of the dishonor of the draft. (*Bradford* v. *Fox*, 38 N. Y., 289 ; *Dayton* v. *Trull*, 23 Wend., 345.)

CHURCH, Ch. J. The important question in this case is whether, from the facts found by the referee, his conclusion of law can be sustained. Did the acceptance of the draft by the plaintiff, under the circumstances found, constitute in law a payment for the price of the hogs ? If it did, the plaintiff cannot maintain the action ; but, if not, the judgment must be affirmed. In determining this question, it is proper to consider, whether the draft is to be deemed delivered and accepted upon the sale and delivery of the hogs, or upon a precedent debt contracted for the purchase of them. The rule differs in the two cases in the application of the presumption of payment. In the former the rule is, that if a vendor of goods receives from the purchaser the note or bill of a third person, such note or bill will be deemed to have been accepted by the vendor, in payment and satisfaction, unless the contrary be expressly proved ; and in such a case the *onus* is upon the person receiving the paper. (*Whitbeck* v. *Van Ness*, 11 J. R., 408.) But when such note or bill is received upon a precedent debt, the presumption is that it was not taken in payment, and the *onus* of establish-

ing that it was so received is upon the debtor. (*Noel* v. *Murray*, 13 N. Y., 167.) The sale was for cash, payable on delivery. No credit was asked or intended to be given, but it is claimed that payment was waived by the absolute delivery of the property. It is competent for the seller to waive payment by an unconditional delivery; but the mere fact of delivery does not necessarily establish a waiver. If the seller accompanies the delivery with a declaration of the conditional terms, or if that be the implied understanding of the parties, the sale is conditional. (2 Kent's Com., 497.)

After finding that the sale was for cash, on delivery, the referee finds, that on the delivery of the hogs to them, the defendants sat down and figured up what the hogs came to; and, after agreeing upon the amount, the agent of defendants, who made the purchase, told the plaintiff that he would have to go up town and get the money to pay for the hogs, and inquired of the plaintiff which he would prefer, the currency or a draft on New York, and the plaintiff said he would prefer a draft, as he wished to take it home; and shortly thereafter the agent procured a draft payable to plaintiff's order, and delivered it to him, and that he accepted it without indorsement, but did not agree to receive it at his own risk.

Was this an unconditional delivery? I think not. The plaintiff doubtless reposed sufficient confidence in the defendants' agent to believe that he would go to a bank and procure the draft as agreed; but the idea of giving credit to the defendants for the price of the hogs was not entertained. It does not appear that the plaintiff had any knowledge of the defendants or their responsibility, and nothing was said on the subject. The agent of the defendants desired to ship the hogs on board the cars before he went to the bank, about three miles distant, for the draft. The plaintiff consented that he might do so, but only upon the agreement that the draft was to be immediately obtained. The agent agreed that he would procure either the money or a draft immediately; and the plaintiff consented to the delivery upon the condition that the draft should be procured as soon as practicable. It

would have been no stronger if this condition had been expressed in terms. Delivery and payment were, by the contract, to be simultaneous acts, and were so, in substance. They constituted a single transaction. If payment had not been made, the plaintiff might have retaken his property. The case is distinguishable from those where a credit is given, or the condition of payment is waived by delivery, in the circumstance that the intervening period between the delivery and actual payment was necessary, in order to make the payment as agreed. In such cases the idea of a waiver is repelled. A person purchases an article of merchandise for cash, and, upon receiving it, gives it to a servant to carry away, after which he counts the money and makes payment. Can it be said that a credit is intended, and, if payment is not made, would not the seller have a right to reclaim his property? Where the intervening period is necessary for counting the money, or drawing a note or bill of a third person, or going to a bank to procure funds, or doing any other act for the purpose of completing a contract of sale and delivery according to its terms, such sale and delivery will not be regarded as complete until the payment is made. All preceding acts are deemed conditional upon full performance. Such a rule insures good faith in commercial transactions, and protects the rights of all parties, and does not interfere with the principle, that an unconditional delivery operates as a waiver of payment.

The delivery was accompanied by the understanding plainly implied, if not expressed, that it was made conditional upon payment. The presumption of law that the draft was received as payment therefore applies, and the plaintiff cannot maintain the action. But suppose the other construction is to prevail, and that a credit was given and the draft delivered and received upon a precedent debt, and that it was incumbent upon the defendants to prove that it was received as payment, the result would not be changed. The referee, it is true, finds that the plaintiff did not agree to receive the draft at his own risk; but this only means that there was no express

agreement to that effect, and that the other facts found do not constitute such an agreement. In this I think the referee erred. If there was a debt it existed at the time of the conversation about procuring the draft, and in determining whether there was an agreement to receive the draft in payment. We must take all that was said and done, and the intervening period is unimportant. It was expressed that defendant's agent was to go to the bank for money *to pay* for the hogs. Plaintiff said he preferred a draft, and the agent promised to procure one, payable to plaintiff's own order. It is clear that the draft was to perform the same service as the money; that is, "to pay" for the hogs. The draft was obtained, as agreed, and delivered, and the plaintiff accepted it without indorsement. What sum was necessary to constitute an agreement to receive the draft as payment? Suppose the agent had had the currency and draft when the conversation took place, and he had told the plaintiff "I have the currency and a draft *to pay* for the hogs; which do you prefer?" and the plaintiff had said, "I prefer the draft," and then received it, would he not be deemed to have agreed to receive it in payment as plainly as if the transaction had been formally written out? For the purposes of this question the transaction is the same as if it had all taken place at the same time, and in construing it we must observe the rule applicable to all contracts, that the intent of the parties is to be effectuated. If the plaintiff had not intended to have received the draft in payment he would have said so, or required an indorsement. (*Darnell* v. *Morehouse,* Court of Appeals, not reported.) And when a creditor has an option, to receive money or a note of a third party, and he accepts the latter, it will be presumed that he receives it with the same effect as if he had received the money. (*St. John* v. *Purdy,* 1 Sand., S. C. R., 9.)

At the first trial before the same referee the plaintiff was nonsuited, on the ground that the draft was received as payment, but the judgment was reversed at the General Term of the eighth district. The learned judge who delivered the

opinion, comments upon various circumstances which appeared in the evidence on the first trial, and which are not found on this trial as facts in the case, and some of which do not appear in the evidence ; but it is unnecessary to determine, whether these circumstances should affect the decision. In any view of the case, as now presented, we are of opinion that the judgment must be reversed.

All concur.

Judgment reversed.