HENRY H. HALL, PLAINTIFF, v. JOSEPH STEVENS AND MELVIN DUNNING, SURVIVING PARTNERS OF McDONOUGH, STEVENS & DUNNING, DEFENDANTS.

*Sale of goods — implied agreement for payment in cash on delivery — when the acceptance by the vendor of a draft drawn by a third person will not discharge the vendee from liability.*

The plaintiff made an agreement with the defendants for the sale to the latter by the former of thirty-six head of cattle, to be delivered at East Buffalo, seventeen head on April tenth, and the other nineteen on May first. On April tenth the seventeen head were taken to East Buffalo, weighed and delivered, and a draft for the amount of the contract-price, drawn by the First National Bank of Buffalo upon a bank in New York, payable to the order of the plaintiff, was obtained by the defendants and delivered without indorsement to the plaintiff, who, on the morning of the eleventh, indorsed and delivered it to a bank with directions to collect it. The draft was sent to New York and presented for payment on April thirteenth, but payment was refused on account of the insolvency of the First National Bank, which discontinued business on the afternoon of that day, and which was in fact insolvent when it made the draft.

Upon the trial evidence was given tending to show that the cattle were delivered late in the afternoon of the tenth; that the draft was delivered after the close of the usual business hours of the bank, and that the plaintiff received it because he believed that the defendants were unable at that time in the day to get the currency. The court directed a verdict for the defendants upon the ground that the plaintiff had accepted the draft as a payment and in satisfaction of his claim against the defendants.

*Held,* error; that the question as to whether or not the plaintiff intended, by accepting the draft, to waive his right to have the price of the cattle paid in cash at the time of the delivery, to which he was entitled by the original agreement, was a question of fact which should have been submitted to the jury.

MOTION by the plaintiff for a new trial on exceptions taken at Chautauqua Circuit, and ordered to be heard at General Term in the first instance.

The action was brought to recover an alleged indebtedness of the defendants to the plaintiff for cattle sold and delivered to them. The defendants allege payment. The plaintiff made an agreement with the defendants to sell to them thirty-six head of cattle and deliver seventeen head of them to them at East Buffalo on the tenth day of April, at six and one-quarter cents per pound, and the other nineteen head at the same place on the first day of May following, at the price of six cents per pound. And the defendants advanced to him $100, to be applied upon the purchase-money of the last delivery.

The seventeen head of cattle were taken to East Buffalo on the tenth of April, were weighed and delivered, and the contract-price amounted to $1,311.25, for which amount the defendants afterward, on the same day, obtained a draft from the First National Bank of Buffalo on the Fourth National Bank of New York, payable to his, the plaintiff's, order and delivered it to him. And on the twenty-fourth day of April the plaintiff delivered to the defendants, at the same place, the other nineteen head of cattle, the price of which they paid him in currency. On the morning of the eleventh of April the plaintiff indorsed the draft and delivered it to the Fredonia National Bank, with directions to collect it. And that bank gave him some money and placed the residue of the amount of it to his credit. This bank immediately sent the draft forward to New York to its correspondent there for collection. On the thirteenth of April the draft was presented to the drawee and payment was requested which was refused, and the draft was protested for non-payment; and the amount of it was thereupon charged by the Fredonia Bank to the plaintiff.

The First National Bank of Buffalo was in fact insolvent at the time it made this draft, but did not discontinue business until the afternoon of the thirteenth day of April, when it closed its doors and finally suspended business. The plaintiff promptly notified the defendants of the situation, and that he should look to them for payment, and afterwards tendered to the defendants the protested draft. This action is brought to recover the price of the cattle so delivered on the tenth of April, on account of which the draft was delivered to and received by the plaintiff.

The court directed a verdict for the defendants; and the plaintiff

took exception to such direction and to the refusal of the court to submit the case to the jury, and now moves for a new trial.

*John S. Lambert*, for the plaintiff.

*Adelbert Moot*, for the defendants.

BRADLEY, J.:

The question presented is whether the legal effect of the delivery of the draft to the plaintiff, and the acceptance of it by him, was upon the evidence necessarily that of payment for the cattle, or whether the determination of the effect of such delivery and acceptance involved the consideration of any question of fact for the jury.

The fact that the First National Bank of Buffalo was insolvent at the time the draft was made and delivered to the plaintiff is not important, although it would have been otherwise if such insolvency had, before such delivery of the draft to the plaintiff, resulted in a suspension of the business of the bank caused by its failure. In that event the delivery of the draft would have been legally ineffectual as a payment. (*Lightbody* v. *Ontario Bank*, 11 Wend., 9; *Ontario Bank* v. *Lightbody*, 13 id., 101; 27 Am. Dec., 179; *Roberts* v. *Fisher*, 43 N. Y., 159; S. C., 3 Am. R., 680.) The bank apparently remained in good credit and continued its business until the afternoon of the thirteenth day of April — three days after the draft was delivered to and received by the plaintiff. And drafts drawn by it on its correspondent bank in New York were not dishonored until that day.

Whether the delivery and receipt of the draft was effectual as a payment depended upon the agreement and understanding of the parties, and that is so whether it was delivered simultaneously with the delivery of the property or afterwards. (*Porter* v. *Talcott*, 1 Cow., 359–383; *Johnson* v. *Weed*, 9 Johns., 310; *Whitbeck* v. *Van Ness*, 11 id., 409; *Noel* v. *Murray*, 13 N. Y., 167.) But when, by and as part of the agreement for the sale of property, the seller agrees to take the note or bill of a third party in payment, the delivery and acceptance of such bill or note will be deemed to have been pursuant to the agreement, and as matter of law treated as payment for the property.

And although no such agreement may have been made prior to the

time of the delivery of the property pursuant to an agreement of sale, the acceptance by the seller from the purchaser of the note of a third person simultaneously with the act of delivery of the property, and in performance of the contract on the part of the purchaser, may, in the absence of any qualifying circumstances, be treated as thus modifying the agreement of sale, and have the effect of payment and satisfaction. (*Whitbeck* v. *Van Ness*, 11 Johns., 409; *Noel* v. *Murray, supra; Gibson* v. *Tobey*, 46 N. Y., 637; S. C., 53 Barb., 191.) This rule, however, rests in presumption only, and is subject to modification by attending circumstances; and the presumption is to the contrary when the note of a third person is delivered and accepted on a precedent debt. (*Noel* v. *Murray*, 13 N. Y., 167.)

In the case at bar the cattle were delivered by the plaintiff pursuant to a valid agreement to sell them to the defendants, made several days prior to the time of such delivery. There being no express agreement then made as to the manner or time of payment, the agreement to pay in money at the time of delivery of the cattle was implied. This was an executory contract for the sale of property, and the obligations assumed by the seller and buyer required of them concurrent and simultaneous acts by way of performance. The sale was upon the condition that on the delivery of the cattle the defendants should pay the plaintiff in money the stipulated price for them ; and unless waived by the plaintiff such condition was in the way of title passing to the defendants until such payment should be made. The delivery of property by the seller under such a contract, without requiring payment, is a waiver of the condition ; but whether the delivery is so made, and such the consequence, depends upon circumstances. And the preservation of this condition precedent to the passing of title does not necessarily require that the delivery be qualified by an express declaration to that effect. It is sufficient that it may be inferred from the circumstances or the acts of the parties. (*Hammett* v. *Linneman*, 48 N. Y., 399 ; *Smith* v. *Lynes*, 5 id., 41 ; *Parker* v. *Baxter*, 86 id., 586 ; *Bowen* v. *Burk*, 13 Penn St., 146 ; *Haskins* v. *Warren*, 115 Mass., 514; *Freeman* v. *Nichols*, 116 id., 309.)

A brief reference to the evidence will show the circumstances, as related by the plaintiff, of the transaction of the delivery of the

cattle. After arriving at East Buffalo with the cattle, and before they were weighed, the plaintiff asked "how it would be about the pay for the cattle," and the inquiry was made of him what he wanted, to which he answered that he "wanted the currency," and was advised by the defendants' agent that "he had arranged that all right," and when asked by the plaintiff if it would not be too late for them to get to the bank before it closed for the day, was informed that "they had arrangements with the bank to do business after banking hours so that it would be all right." The cattle were then weighed, and the defendants took the possession of them. The plaintiff then went to the defendants' office. The amount was there figured up and announced, and the defendants were informed that the plaintiff "would like his currency now, as he wants to get home." The person representing the defendants "replied that he didn't know how it would be about getting the currency, and asked if a draft wouldn't answer the plaintiff's purpose, and the latter said, "perhaps a draft might answer, but I would prefer the currency as I wanted to use it when I got home." Nothing more was then said, but an hour and a-half or two hours afterwards the draft was handed to the plaintiff, who remarked that it had not been indorsed and was advised that it was payable to his order and was all right as it was. He also remarked, "I suppose you couldn't get the currency," to which no reply was made.

The time when the cattle had been weighed and delivered was late in the afternoon. The bank was about three miles from the defendants' office, and when the draft was obtained it was after the close of the usual business hours of the bank. The plaintiff remained at East Buffalo, where, and until, the draft was delivered to him, and the inference is fairly required that he remained there to receive his pay for the cattle. The plaintiff did not, by the agreement of sale as originally made, agree to take this or any draft. It required the payment in money, but the evidence justified the conclusion, although it did not require, that the delivery to and receipt by him of the draft was effectual as a performance on the part of the defendants, and as payment and satisfaction. It may be observed that there was a valid agreement between the parties to sell and purchase the cattle and to pay and receive money only for them; that the agreement was fully

performed on the part of the plaintiff by the delivery of the property to the defendants, and that he was then entitled to the payment of the price in money. At this time no other means of payment had been mentioned, nor does it appear that any modification of the terms of the contract in this respect had then been contemplated. The evidence tends to prove that the plaintiff did not intend to give credit. When he delivered the cattle he evidently expected to get pay for them before he left, and remained there for that purpose; and it would be difficult to reach any other conclusion upon the evidence, although the conse quences of acts do not necessarily depend upon undisclosed intention. (*Upton* v. *S. C. Mills*, 111 Mass., 446.) The obligation of the defendants to pay had become effectual, and the inference is permitted that the plaintiff received the draft, because he believed the defendants were unable at that time in the day to get the currency, and for their accommodation and convenience. He had advised them that he wanted the currency, and it may be inferred that he delivered the cattle in expectation of receiving it. And afterwards, when he was asked if a draft would answer his purpose, he expressed his preference for the currency and said, "perhaps a draft might answer." We think the evidence was such as to justify the conclusion that the draft was received by the plaintiff on account of the obligation the defendants had assumed, arising out of the contract when the cattle were delivered, to pay him the money, and for their accommodation, as distinguished from a payment pursuant to and in performance of the contract of sale of the property; and in that view there was a question of fact for the consideration of the jury. (*Ellis* v. *Wild*, 6 Mass., 321; *Johnson* v. *Weed, supra; Smith* v. *Lynes*, 5 N. Y., 41; *Osborn* v. *Gantz*, 60 id., 542.)

This proposition was not in the case of *Gibson* v. *Tobey* (46 N. Y., 637). There the seller preferred a draft to the currency, and a draft was accordingly obtained for, and delivered to, and accepted by him. He had his option to take the money or a draft, and took the latter as a performance of the contract on the part of the purchaser. The question here is a close one, and it may seem not to be a very broad ground upon which to distinguish the case at bar from the principle of the first proposition considered by the court in that one, inasmuch as the draft was received by the plaintiff

without any expressed qualification, and without the defendants' indorsement. Those circumstances, however, are matters of evidence going in support of the defendants' contention, and do not necessarily furnish a legal presumption of payment. In the Gibson case the payment was made in the manner expressly requested by the seller, and the purchaser, in converting money into the draft, was acting for the former and his accommodation with a view to the completion of performance of the contract of sale and purchase, while in this case the jury were permitted by the evidence to say that the defendants proceeded on their own account to obtain the draft, with a view to relieve themselves from their existing obligation to pay money, and that the plaintiff was induced to take the draft for the convenience of the defendants, notwithstanding his desire to receive the currency which they were then liable to pay, and not in performance of the contract of sale of the property. And in considering the second of the two grounds upon which the decision of the court in *Gibson* v. *Tobey* was placed, the court very appropriately remarked : " When a creditor has an option to receive money or a note of a third party, and he accepts the latter, it will be assumed that he receives it with the same effect as if he had received the money." The fact which supports the presumption that the note of a third person is taken in payment for property sold, is that the agreement to accept it is or has become a part of the contract of sale and purchase, so that it may be said to have been received pursuant to and in performance of it. And when the circumstances permit the conclusion of severance of the act from that which the performance of the contract requires, then the presumption of payment does not, as matter of law, arise, although they may be such as to present a question of fact for the jury whether the note is received pursuant to the contract and as a performance of it. This seems to be within the rule deducible from *Whitbeck* v. *Van Ness*, and the subsequent cases in this State where the like question has arisen.

If these views are correct, the motion for a new trial should be granted, costs to abide event.

SMITH, P. J., concurred ; HAIGHT, J., not voting.

Motion for new trial granted, costs to abide event.