CHALLONER and another, Respondents, vs. BOYINGTON and another, Appellants.

*October 26 — November 15, 1892.*

*Sale of chattels: Payment by note of third person: Burden of proof.*

The terms of payment for machinery sold by plaintiffs to defendants were, "Cash at the end of thirty days trial, or note, with interest, due in ninety days." At the end of twenty days, a corporation to which defendants had ordered the machinery to be sent expressed satisfaction therewith and sent its note to plaintiffs for the price. *Held*, that there was then no pre-existing debt of defendants for such price, and that therefore the presumption is that when plaintiffs accepted such note they took it in *payment* for the machinery.

APPEAL from the Circuit Court for *Price* County.

The allegations of the complaint, in substance, are that the plaintiffs are copartners, as well as the defendants, and that on the 25th day of January, 1890, they sold and delivered to the defendants, on their order, an 18-inch block shingle machine and a smaller machine, and the iron parts for others, all at the agreed price of $2,216.75, upon the terms that the defendants should take the machinery on thirty days trial, and, if at the end thereof it was satisfactory, payments were to be made in cash, or their note, with interest, due in ninety days; that the defendants received it upon these terms, and the trial thereof was satisfactory, but they neglected and refused to pay said sum, with interest from said date, according to the terms of said sale, or to give their note therefor, as alleged; that, as security for the payment of said amount, the defendants, on the 28th day of May, 1890, delivered to plaintiffs a promissory note of the Cypress Lumber Company for said sum, payable in ninety days from that date, and plaintiffs received the note for that purpose; that at its maturity the Cypress Lumber Company was unable to pay the same, and the plaintiffs accepted a new note for a like sum, with

interest, namely, $2,289, in lieu thereof, executed by the said company, payable October 29, 1890, and the former note was given up to the defendants; that upon the maturity of said last-named note the Cypress Lumber Company was unable to pay it, and the plaintiffs again accepted of the defendants a new note, executed by said company, in renewal of the old one, and for the same purpose, due December 29, 1890, and entered the time of payment accordingly, and at the same time delivered up the old note of the Cypress Lumber Company; that upon the maturity of said last-named note the said company was unable to meet it, and the plaintiffs, at the request of the defendants, accepted of them two notes of the said company, due in four and five months from their date, to wit, January 2, 1891, for $1,144.86, with interest; that said notes were accepted for the same purposes as the former ones, and that thereafter, on the 31st of January, 1891, plaintiffs took, as additional security of the defendants, four shares of stock in said company, held by said defendants personally; that one of said last-named notes became due May 2, 1891, and has not been paid. Plaintiffs bring into court, for return to said defendants, said note and an assignment to them of said four shares of stock of the Cypress Lumber Company, and the plaintiffs demand judgment against the defendants for the sum of $1,108.38, with interest from the 25th of February, 1890. The answer was a general denial.

The cause was tried by a jury, and a special verdict taken, consisting of the answers to ten questions, the first five of which were answered by direction of the court, and to the effect that the plaintiffs and defendants, respectively, were copartners as set forth in the complaint, and that the Cypress Lumber Company was a corporation organized under the laws of the state of Wisconsin; that the plaintiffs sold and delivered the goods described in the complaint for the sum of $2,216.75, to be paid for February 25, 1890, and

they proved satisfactory on trial to the purchasers; that the goods had not been paid for by any one, except by the unpaid promissory notes described in the complaint; and that the plaintiffs had returned all of said notes except those dated January 2, 1891, and they delivered the note of $1,144.86 and the four shares of stock into court on the commencement of the action, as alleged. The jury, having been charged in the law, answered the remaining questions to the following effect, namely: (1) The plaintiffs sold and delivered their goods through their agent, Ruttman, on the individual credit of defendants. (2) They did not sell and deliver said goods to the Cypress Lumber Company on its credit, through its officers or agents. (3) The plaintiffs did not accept the notes of the Cypress Lumber Company, described in the complaint, or any of them, in full payment and satisfaction of their claim. (4) They accepted all of said notes as additional security, without releasing their alleged claim against the defendants. (5) The plaintiffs accepted the notes of the Cypress Lumber Company, dated January 2, 1891, due in four and five months, respectively, only as additional security, without releasing their claim against defendants.

One of the plaintiffs testified that they received from the defendants an order by mail for some shingle machinery, including a hand machine. The order was dated November 18, 1889, addressed to the plaintiffs, and signed by the defendants, directing them to enter their order for the machinery to be shipped December 20, 1889, "terms of payment to be cash at the end of thirty days' trial, or note, with interest, due in ninety days." Other orders were produced, one dated the 25th of November, 1889, saying they had "decided to take the hand machine,— one same as you showed *Atwell* when there last week,— and will pay for it, as you kindly stated we could, during the coming summer;" another letter, dated December 30, 1889, stating that they

would be pleased to have plaintiffs make for them as fine a machine as they ever made, and that they would send them shipping directions in a few days, and also ordering some machinery; and another, dated January 8, 1890, directing a modification of former order, and that all should be shipped, by way of certain railroads, to the Cypress Lumber Company, at Sherrill, Ark. Witness stated the goods were shipped, in accordance with the directions, January 25, 1890; that an invoice was made of them to the defendants, and mailed to them, but the goods were not paid for in accordance with the terms of the contract; that they received a note of a third person, about the last of May, 1890, in a letter dated Sherrill, Ark., May 28, 1890, addressed to the plaintiffs at Oshkosh, Wis., as follows: "Gentlemen: We have run your ten-block shingle machine now about twenty days, and am very well satisfied with it, only we have not been able to reach 100 M. per day yet. Inclosed you will find our note for $2,216.75 on ninety days, in payment for the machine. CYPRESS LUMBER Co. Per J. N. BOYINGTON, Treas." Witness said the note was not paid; was renewed by the Cypress Lumber Company; that *W. E. Boyington* made application for its renewal by letter dated August 25, 1890, to the plaintiffs, saying: "Yours of the 12th was forwarded to me here. I inclose you one note for $2,216.75, for sixty days, a remit [renewal] of the one due Aug. 1, 1890. I will send you the interest as soon as I return to Sherrill. W. E. Boyington;" that they did not get the note of the defendants *Boyington* or *Atwell*, or any other note than of the Cypress Lumber Company. The interest was not paid, nor the renewal note. "It was renewed still further by the defendant *Boyington* in our office in October. He stated that they were not able to pay, and would like a renewal. We kicked a little, and finally consented. *Boyington* promised to meet that note when it was due. He said *Boyington & Atwell* were not able to pay

it." At the end of ninety days *Mr. Atwell* wished a further extension, because he could not pay, and plaintiffs insisted upon security or partial payment, and a new note for the balance. *Atwell* said they would be glad to pay the note, but were unable to do so at that time. " After some correspondence, they sent us two other notes of the Cypress Lumber Company to renew them, and four shares of stock of the Cypress Lumber Company,— two individual shares of *Boyington's* and two of *Mr. Atwell's*, $1,000 each,— by letter from defendant *Boyington*. By terms of the order we were to ship the machinery about the 19th or 20th of December, and we received instructions to delay shipments from the defendants by letter dated December 24, 1889. Some one paid interest on this account. I do not know who." January 27, 1891, the Cypress Lumber Company wrote to the plaintiffs, sending them its notes for $1,144.86 and $1,144.87, to take the place of a note they held against it of $2,289.73, and inclosing shares Nos. 1 and 2 of the defendant *Boyington*, and shares Nos. 20 and 21 of *V. P. Atwell*, in the company, as security for the payment, and stating that " we could not see our way clear to give you a mortgage on the plant for your claim as you wished us to do. Please return the old note to us at Sherrill. CYPRESS LUMBER Co. By V. P. A., Sec." " The account was charged on our books to *Boyington & Atwell*."

Witness said plaintiffs used the double entry system of bookkeeping, and when they received bills receivable, " we credited them to the account to which they belonged. When we received this first note of the Cypress Lumber Company, we credited that to the account of the defendants. The order for the machinery was taken by Ruttman. Had not personally seen the defendants in regard to the matter. Did not understand that the goods were all for the Cypress Lumber Company. First knew it was to go to that company when we got shipping directions from de-

fendants.   Goods were shipped about the last of January. I suppose we sent the invoice, made at the time the goods were shipped, to the Cypress Lumber Company.  *Boyington & Atwell* had an invoice."  The invoice is dated Oshkosh, January 25, 1890, and is as follows: "Cypress Lumber Co., Rainey, Ark.  Bought of George Challoner's Sons, manufacturers of shingle and sawmill machinery, steam engines, pumps, etc.," various items, to the amount of $2,216.75.  Another statement of account, dated April 1, 1890, was sent to the Cypress Lumber Company, about the time it bears date, which is as follows: "Cypress Lumber Co.  In account with George Challoner's Sons.  January 25, 1890.  To Mdse., $2,216.75.  Kindly favor us with settlement, and oblige GEO. CHALLONER's SONS."  "Up to May 28, 1890, we had no account on our books against the Cypress Lumber Company.  What the statement shows does not appear on our books with that heading.  We received the note of the Cypress Lumber Company, per J. N. Boyington, Treasurer, dated May 28, 1890, payable ninety days after date to our order, for $2,216.75, eight per cent. interest until paid, at the Bank of Pine Bluff, Pine Bluff, Arkansas, for value received.  We credited this note to the account of *Boyington & Atwell*."  In reply to the receipt of the note, plaintiffs wrote the Cypress Lumber Company, under date of May 31, 1890, as follows: "We have received your favor of 5–28, covering note at ninety days in settlement of account, for which please accept thanks.  We of course are very glad to hear that you are very well satisfied with machine.  Very truly yours, GEO. CHALLONER's SONS."  Witness testified that the statement in the letter, "in settlement of account, for which please accept thanks," refers to *Boyington & Atwell's* account, which is spoken of in this case.  "At the time the negotiations were going on, I did not know that *W. E. Boyington* was president, or that *Atwell* was secretary, of the Cypress Lumber Company.

Did not then know that there was a Cypress Lumber Company;" that they did not ask the defendants to indorse the Cypress Lumber Company's note; that he could not explain why he made the invoice to the Cypress Lumber Company, or the statement of account to it; that he sent an invoice to *Boyington & Atwell,* but did not remember that he ever sent them a statement of account.

The defendant *Atwell* testified that he ordered the machinery at the request of the Cypress Lumber Company at a meeting of its board of directors.. "We told Ruttman, who took the first order from us, that it was for the Cypress Lumber Company; this machinery was in fact for that company;" that the defendants received an invoice, which they mailed to George Challoner's Sons, and that witness wrote on the face of it that the machinery was all for the Cypress Lumber Company, to be paid for by them, and to send an invoice to them, signing it "*Boyington & Atwell.*" "Our written proposition was in November, 1889, and the machinery was shipped about January 25th." From that time down the firm of *Boyington & Atwell* has not received any statement of account or invoice from George Challoner's Sons in regard to it, except the papers served in this action. One of the plaintiffs "asked me who the machinery was for, and where it was going. I told him to the Cypress Lumber Company, at Sherrill."

The defendants moved the court to direct a verdict in their favor, because (1) the purchase was made by *Boyington* and *Atwell,* president and secretary of the Cypress Lumber Company, for that company, and it was a purchase and sale to it, instead of to *Boyington & Atwell*; (2) that the plaintiffs accepted the note of the lumber company in full settlement, and took the Cypress Lumber Company for payment. The court denied the motion, and defendants excepted.

The court charged the jury that, "if the credit was origi-

Challoner and another vs. Boyington and another.

nally given to *Boyington & Atwell*, they might relieve themselves of responsibility if there was an express agreement between the parties that the plaintiffs should accept the note of the Cypress Lumber Company in payment and full settlement of the original claim or account which they might find the plaintiffs had against *Boyington & Atwell*; that the burden of proof upon this question was on the defendants;" that, "if you find from the evidence that there was an express agreement on the part of the *Challoners* that they would take this Cypress Lumber Company's note in payment and in satisfaction of the debt which the plaintiffs claim was already existing against the defendants, and that the plaintiffs should run the risk of collecting that note, and accept it whether paid or not,— in that case the plaintiffs would be bound by it, and they would be compelled to rely upon these notes of the Cypress Lumber Company, and lose their claim if they were not collected. But you must find from the evidence that there was an express agreement to that effect." "Although the creditor gives a receipt to his debtor for the note, as in payment for such a debt, it is necessary for the debtor to prove that the creditor expressly agreed to take the same in payment and extinguishment or satisfaction of such debt by the debtor." "The defendants in this case rely largely upon certain written propositions, the turning over of this note, and the acceptance of it. Now, I have held that it does not necessarily follow that such an agreement was an *express* agreement. But you must find that there was an understanding between these parties, in order to answer this question favorably to the defendants,— that is to say, that the Cypress Lumber Company's note was to be taken in satisfaction and extinguishment of the claim; that that was the agreement or bargain; and it must be an *express* agreement."

Defendants moved to set aside the verdict for errors in

the charge, for denying the motion for nonsuit, for refusal to direct a verdict for the defendants, and because the verdict does not cover the material issues of the case and is not sufficient to warrant a judgment. The court denied the motion, and, on plaintiffs' motion, granted judgment for $1,108.77, damages, besides costs, from which the defendants appealed.

For the appellants there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

For the respondents there was a brief by *Phillips & Kleist*, and oral argument by *M. C. Phillips*.

PINNEY, J. The machinery sold by the plaintiffs, whether sold to the defendants on their credit, or to the Cypress Lumber Company, was sold for "cash at the end of thirty days' trial, or note, with interest, due in ninety days;" and, according to the evidence, when the note of the Cypress Lumber Company was mailed by it to the plaintiffs, and when it was received by them, the period of trial of the machinery, etc., had not elapsed, but, having tried it twenty days, the company expressed its satisfaction with it. This was in answer to a letter from the plaintiffs, of a month previous, to the company, sending their account to it, and asking its settlement. They had previously sent an invoice of the machinery, etc., to the Cypress Lumber Company. The plaintiffs, on receipt of the note by mail, acknowledged the receipt of the note "at ninety days, in settlement of account, for which please accept thanks. . . . Awaiting your further valued favors, we are," etc. The plaintiffs had charged the machinery to the defendants on their books, and they at once credited them with the note.

We think that, upon a fair construction of the transaction in question, the agreement of sale would not be complete until there had been thirty days trial of the machinery, etc., according to the terms of the order, and that at the

time of the delivery of the first note by the Cypress Lumber Company to the plaintiffs there was no antecedent or pre-existing indebtedness of the defendants to the plaintiffs, upon any fair theory of the case. There is no evidence tending to show, as alleged in the complaint, that this note, or any of those given in renewal of it, was taken expressly as security. The note was sent by the Cypress Lumber Company in *payment* for the machinery, etc., and its receipt was acknowledged in *settlement* of the account which had been sent for the same property. The terms of the letter acknowledging the receipt, together with the fact that they credited the account of the defendants with the note which balanced it, all are pretty cogent evidence in support of the claim that the note was received in payment for the property sold. Until there had been a satisfactory trial, we think it is not possible to say there was any indebtedness on the part of the defendants, even upon the plaintiffs' theory, for the machinery. Until then the title did not pass and no action could have been maintained on the contract for the price. Benj. Sales, 365. In *Ford v. Mitchell*, 15 Wis. 308, the law was settled in this state to be that "where the note of a third person is received upon the sale of goods, or for an indebtedness contracted at the time, the note will be deemed to have been taken by the vendor in satisfaction, unless the contrary be expressly proved, or unless the note be void, and there be fraud or misrepresentation respecting it." There has been no decision of the court withdrawing or qualifying the law as thus laid down, and as applicable to the particular case of the note of a third party received upon the sale of goods or for an indebtedness contracted at the time, although Mr. Justice TAYLOR expressed a doubt in respect to it in *Hoeflinger v. Wells*, 47 Wis. 628, 631; but that case was distinguished, and a decision of the point was not necessary to the determination of it. The case of *Allis v. Meadow*

*Springs Distilling Co.* 67 Wis. 22, was a case of an *antecedent* debt, and the point does not seem to have been material to the decision.

This is in harmony with the law as laid down in the state of New York from the earliest period. Some of the cases in that state have been cited in *Ford v. Mitchell*, 15 Wis. 308. The subject has recently been considered by the court of appeals in New York in the case of *Hall v. Stevens*, 116 N. Y. 201–206, and it is there held that where a note of a third party is received for a present, and not a precedent, debt, the presumption is that it was agreed to be taken in payment, and the burden of proving the contrary rests upon the plaintiff; while if it was for the latter, or an antecedent debt, the presumption is that it was not taken as payment, and the *onus* of establishing that it was so taken rests upon the defendant. See, also, Benj. Sales, sec. 1081, and note, in which it is said that if the seller desires to hold the buyer, the appropriate method is by requiring his indorsement. If the seller accepts the note without indorsement, that fact indicates an intent to take the note in exchange for the goods, and not to hold the buyer. 2 Daniel, Neg. Inst. sec. 1264; *Bayard v. Shunk*, 1 Watts & S. 95. The whole subject was fully considered and discussed in *Gibson v. Tobey*, 46 N. Y. 637.

The circuit judge, therefore, erred in charging the jury that the note of a third party would not relieve the defendant, even if received in payment by the creditor, unless such creditor expressly agrees with his debtor, or the person turning over such note, that the note shall be in full payment of the debt, whether the note is paid or not, or that the creditor will run the risk of the collection and payment of such note so turned over to him; and also in instructing the jury that, although the creditor gives a receipt to his debtor for the note of a third party, as in payment of such a debt, it is necessary for the debtor to prove

that the creditor expressly agreed to take the same in payment and extinguishment or satisfaction of such debt by the debtor, and also in charging the jury, as in substance he did, that, if they found that the machinery, etc., was sold to the defendants, the burden of proof was on the defendants, in a case such as this, to show that the note of the Cypress Lumber Company was taken in payment for the machinery, etc. If the note had been the note of the defendants, or of a third party, given for a *pre-existing* debt, the charge would have been correct; but in this case, for the reason above stated, the burden of proof was on the plaintiffs to show that the note was not taken in payment for the machinery. The entire charge proceeds throughout upon the erroneous assumption that, if the jury found that the machinery, etc., was sold on the credit of the defendants, the debt was necessarily a *pre-existing* one, and not one presently contracted. For these errors in the instructions to the jury, the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.