BRITTAN, Trustee, Appellant, vs. BUERGER COMMISSION COMPANY, Respondent.

*February 7—March 4, 1919.*

*Money lent: To whom? Note of third person as payment: Presumption: Evidence: Special verdict: One question covering two matters: Instructions to jury: Bankruptcy: Prior payments: Fraudulent transfer: Unlawful preference.*

1. A finding by the jury to the effect (1) that the money represented by a check sent by the defendant to, and payable to the order of, the president and manager of a grain company, was in fact loaned to that company, although the only written obligation given on account thereof was the individual note of the vice-president of the company, and (2) that the presumption that said note was received by defendant as payment of the money advanced was rebutted and overcome,— is *held* to be sustained by the evidence.

2. Although, perhaps, it would have been better had the two questions above indicated been submitted to the jury separately, yet under the instructions given the one question which was submitted, *i. e.* as to whether the money was a loan to the grain company, sufficiently covered both propositions.

3. Although, pursuant to an arrangement with said grain company and with the consent of its successor (which had assumed the liability), defendant applied certain credits in part payment of the loan, and within four months thereafter such successor was adjudged a bankrupt, and even if the evidence tended to show insolvency of such successor at the time such application of credits was made, yet there was no evidence warranting submission to the jury of the question whether that application constituted either a fraudulent transfer or an unlawful preference under the bankruptcy act—the transaction having been, so far as the evidence shows, an ordinary business transaction between two going concerns, both acting in good faith and both believing themselves to be solvent.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

Action by the trustee of the P..B. Mann-Anchor Company, a bankrupt Minnesota corporation, against the defendant, a Wisconsin corporation, to recover $3,646.63 on account of the proceeds of grain consigned by the bankrupt to the defendant for sale on commission. The value and amount of the grain consigned to and sold by the defendant was admitted, but the defendant claimed that in June, 1914, it advanced $5,000 to the Anchor Grain Company (the predecessor of the P. B. Mann-Anchor Company) upon the agreement that the same was to be repaid out of the proceeds of the sale of grain so consigned to and sold by the defendant; that in August, 1914, the Anchor Grain Company and the P. B. Mann Company (also a Minnesota grain-dealing corporation) were consolidated and the P. B. Mann-Anchor Company formed, which took over the assets and assumed the liabilities and obligations of both corporations, including the contract aforesaid; that the consignments of grain for the value of which this action was brought were made under that arrangement; and that the defendant, pursuant to said arrangement with the Anchor Grain Company and the P. B. Mann-Anchor Company, had applied the said sum of $3,646.63, out of the proceeds of the grain so consigned to it, to the payment of said $5,000 advance, leaving

$1,510.31 still due thereon. The plaintiff claimed in reply that said $5,000 advance was not made to the Anchor Grain Company, but to one A. F. Brenner, the vice-president of the company, on his own individual credit, and further that, in any event, the application by the defendant in payment of the $5,000 advance of the sums owing for grain consigned and sold was void under the provisions of the bankrupt act as a fraudulent transfer or unlawful preference, or both.

The action was tried before a jury, which returned a special verdict composed of one question and answer as follows: "Was the $5,000 represented by defendant's check of June 27, 1914, a loan to the Anchor Grain Company? A. Yes." Upon this verdict judgment was rendered dismissing the complaint upon the merits and determining that the P. B. Mann-Anchor Company was indebted to the defendant in the sum of $1,510.31, and from this judgment the plaintiff appeals.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Emmet Horan, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Horan.*

For the respondent there was a brief by *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* of counsel, all of Milwaukee, and oral argument by *Julius E. Roehr.*

Winslow, C. J.    It is undisputed that the defendant sent its check for $5,000 payable to the order of Mrs. Sarah M. Passmore, the president of the Anchor Grain Company, on June 27, 1914. It is also undisputed that the check was sent to Mrs. Passmore as the immediate result of a conversation had by Mr. A. F. Brenner, vice-president of the company, with Mr. Riebs, treasurer of the defendant, at Milwaukee on the same day, and that no note or acknowledgment of indebtedness was ever received by the defendant from the Grain Company, but that Mr. Brenner gave his individual note therefor. It further appears that the money

was credited to Brenner's account, which was then over-drawn on the books of the Grain Company, and charged against Brenner on the books of the defendant company. Mr. Brenner also testified that he borrowed the money on his individual account.

The first claim of the plaintiff is that on this evidence and some other evidence of minor importance a verdict for the plaintiff should have been directed, because it is proven without substantial dispute that the loan was a loan to Brenner and not to the Grain Company.

In this connection the plaintiff makes the additional claim that, even if there were evidence in the case which would sustain a finding that the loan was made to the Grain Company, still there was no evidence to meet the well-understood presumption that when the note of a third person is received for an indebtedness contracted at the time, it is received as payment of, or, as it is sometimes said, in exchange for, the goods sold or money advanced. *Challoner v. Boyington,* 83 Wis. 399, 53 N. W. 694.

We are unable to agree with either contention. It clearly appears from all of the evidence in the case that Sarah M. Passmore was not merely the president but the active managing officer of the Anchor Grain Company as well as of the Mann-Anchor Company, who, with the consent of the directors, exercised full authority in all business transactions of either company. Mr. Riebs, the defendant's treasurer, testified directly that in the month of June, before the advance was made, Mrs. Passmore came to Milwaukee, talked over the grain business for the coming year, and wanted to know if the Anchor Grain Company could obtain a loan of $5,000 or $10,000 from the defendant in case they needed it to handle the expected large crop; that he told her they would be pleased to accommodate her with $5,000, and if necessary would extend credit for a larger amount; that she was pleased and promised to let the defendant handle all their grain coming to Milwaukee, and said that Mr.

Brenner would come and visit Mr. Riebs to learn the prospects for the future, and that the advance if made would be taken care of by allowing the credits on the cars consigned to stand until they should cover the amount of the loan. Mr. Riebs further testified that after that interview Mr. Brenner came to Milwaukee, talked about the grain situation, the large amount of money that it would take to swing it, and wanted to know the credit which the Anchor Grain Company could get from the defendant, and was told by the witness that they could have $5,000 or $10,000; that he (Brenner) said they could use the money right now, and as the outcome of the interview the check of $5,000 was sent to Mrs. Passmore; that Mr. Brenner also said that he wanted the money for the Anchor Grain Company.

In addition to this testimony of Mr. Riebs there are in the record letters from the Mann-Anchor Company through its president and managing officer, Mrs. Passmore, written in October, November, and December, 1914, in substance acknowledging the note as the note of the Mann-Anchor Company and arranging to pay it by letting the balances due them from the defendant company on cars consigned, over and above the drafts drawn thereon, stand and accumulate until they amounted to enough to pay the note.

There is much other evidence in the record tending in an indirect way to substantiate the defendant's claim that both parties understood that the $5,000 advance was in fact an advance to the Anchor Grain Company and not to Brenner personally, notwithstanding the fact that Brenner's individual note was the only written obligation given for it. The business relations of the two corporations were very close and friendly, the defendant corporation evidently had the most implicit confidence in the financial soundness and integrity of the Anchor Company and its successor, the Mann-Anchor Company, and a careful reading of the evidence impresses us with the idea that they advanced the money in question on the credit of the Anchor Company and

expecting that company to pay it.   Mr. Brenner himself testified that he looked to the Anchor Company to take care of the loan.

Without attempting to review the entire evidence in the case in this opinion, we may say that we are convinced that there was sufficient evidence to permit the jury to find not only (1) that the loan was in fact made to the Anchor Grain Company, but (2) that the presumption that Brenner's note was received in payment or exchange for the loan was overcome.

Perhaps it would have been better had these two questions been submitted to the jury separately, but under the instructions given to the jury the one question submitted covered both propositions.   They were instructed that if they were satisfied to a reasonable certainty by the preponderance of the evidence that the $5,000 was loaned to the Anchor Grain Company on its request and on its faith and credit and that the defendant looked to said company and not to Brenner for payment, and that the Grain Company and not Brenner became liable to the defendant for the payment of the loan, they should answer the question submitted to them in the affirmative, and if not so satisfied they must answer it in the negative.   Previous instructions had informed them in effect that the fact that Brenner's individual note was received by the defendant tended to show that the defendant looked to him for payment, but was not conclusive and was open to explanation.   Taking all the instructions together, they seem to us to have informed the jury in substance that the fact of the taking of Brenner's note created a presumption that it was received in payment, which presumption, however, was open to explanation or rebuttal by other facts tending to show that both parties expected and intended that the loan was in fact made to the Grain Company and was to be repaid by that company.

The application of credits was made by the defendant January 5, 1915, and the petition in bankruptcy was filed

within four months thereafter, to wit, March 25, 1915, and the plaintiff contends that the jury should have been asked whether the application constituted either a fraudulent transfer or an unlawful preference within the provisions of secs. 67 (e) and 60 (a) (b) of the federal bankruptcy act. Proper requests were made that these questions be submitted to the jury, which were refused and exception taken.

We have been unable to reach the conclusion that there was any evidence in the case which would have justified the submission of either question to the jury. If it be granted that there is any substantial evidence tending to show insolvency of the Mann-Anchor Company in January, 1915, there is absolutely no evidence that the defendant had any knowledge of the fact or had any reason to believe that the application of credits would effect a preference; nor is there any evidence tending to show that the Mann-Anchor Company consented to the application with intent to hinder, delay, or defraud creditors.

So far as the evidence shows, the transaction was an ordinary business transaction between two going concerns, both acting in good faith and both believing themselves to be solvent.

In our judgment a just result has been reached in this case without prejudicial error.

*By the Court.*—Judgment affirmed.