HEWITT et al. v. WATERMAN et al.

One who transfers by delivery, without endorsement, a bill, for a sufficient consideration, knowing it to be of no value, where the assignee is not aware of its want of value, will be bound to repay the money received, though there was no representation of the solvency of the parties. C. C. 2619.

APPEAL from the Fourth District Court· of New Orleans, *Strawbridge,* J, *Mott,* for the plaintiffs.

*Rawle,* for the appellants. In this case, the contract is an exchange. C. C. 2630. Merchandize and a small sum of money were exchanged for a bill of exchange. In the case of *Shuff* v. *Cross,* merchandize and a small sum of money were exchanged for a note. The obligation proved to be of no value, and the defendant was sued for the price of the goods sold. The court said that it was an exchange, and that each party is considered as vendor and ven-

dee. See also C, C. 2637. " What then are the obligations of him," says the
court, " who disposes of an incorporeal right ? Positive law has defined them.
He who sells a debt or an incorporeal right, warrants its existence at the time
of the transfer. But he does not warrant the solvency of the debtor, unless he
has agreed to do so." Code. Pothier, Vente, 560. Dig. 21, 2, 74. No such
agreement is proved here, and the evidence has failed to establish fraud." 12
Mart. 89. The contract extends no further than the existence of the debt or
obligation: " parceque le vendeur cède la créance, telle qu'elle est, bonne ou
mauvaise." Rogron. " L'acheteur ne saurait se plaindre de ce que le débiteur
n'est pas solvable, &c., de ce que les cautions sont en déconfiture. Le cédant
a transféré la créance dans l'etat où elle était; il ne s'est engagé à rien de
plus." Troplong, Vente, no. 934. The law is, that he who transfers an obliga-
tion or a debt, warrants its existence only. This is settled in every country in
which either roman or english law is in force, and in Louisiana it is established
by legislative enactment and judicial construction.

" In regard to extrinsic circumstances, forming no part of the sale, but con-
nected therewith and forming an inducement thereto, or enhancing the value of
the thing sold, there is no obligation, on the part of the seller or buyer, to dis-
close his knowledge of them. Thus, a vendee is not bound to disclose the fact
that the land, which he contracts to buy, contains a mine, although the vendor
be ignorant of the fact, and although it would greatly enhance the value of the
land. So, also, he is not bound to disclose the rise of the market, or any other
knowledge which he may have from private sources, and unknown to the sel-
ler." Story on Contracts, no. 843. " But, at the same time, each party must
take care not to say or do any thing tending to impose on each other." *Laidlaw* v.
*Organ*, 2 Wheaton, 178. Misrepresentation or artifice will invalidate a contract,
but-where both parties are in the same relative position, the contract is not
destroyed by one failing to disclose the knowledge of extrinsic circumstances.
Pothier, Vente, no. 298. 2 Kent, 491.

The judgment of the court was pronounced by

SLIDELL, J. The object of this action is to recover from the defendants the
value of a quantity of bagging, which the plaintiffs sold to the defendants for a
draft of *Rayburn*, accepted by *Rayburn, Scott & Co.* for $1,250, at ninety days,
and a small sum in cash. The defendants' counsel treats the contract as one of
exchange ; and it may be conceded, for the purpose of the present enquiry,
that it does fall under that class of contracts. With certain exceptions, not
relevant to the present controversy, an exchange is subject to the principles
which control the contract of sale ; and each party is considered " in the double
light of vendor and vendee." Civil Code, 2637.

It appears that *Rayburn* had bought, in June, 1846, some hardware from the
defendants, who are hardware dealers, for which he gave his note for $3,050
52, at four months. He also owed them upon an open account. In October,
1846, being unable to pay the plaintiffs, *Rayburn* gave them his note for the
entire indebtedness, $4,182 41. payable one day after date. On the 24th
October, 1846, *Rayburn*, at the request of the plaintiffs, and after a conversa-
tion about his affairs,gave them acceptances of his own drafts by *Rayburn, Scott
& Co.*, of which firm he was a member. One of them was the draft for $1,250
above mentioned. *Rayburn, Scott & Co.* suspended payment on the 26th Oc-
tober, and subsequently proved to be largely insolvent. On the same day on
which the draft was drawn, the defendants employed a broker to trade it off for
merchandize. The same broker had been employed by other parties to trade
off acceptances of the same house. The broker applied to the plaintiffs' clerk
to buy bagging for the paper; but *Hewitt* not being present at the time, he was
requested to call again. *Hewitt* appears to have made some enquiries about
the character of the paper ; and, not learning any thing to the disadvantage of
the acceptors, made the sale of bagging the next day. It is conceded that the
bagging was sold at its fair market value, and that the acceptance was taken at

the usual rate of good unmatured acceptances. All the circumstances of the case, which it is not necessary to detail at length, justify the conclusion, which must have been adopted by the district judge, that the defendants knew at the time that *Rayburn, Scott & Co.* were insolvent. No representation of their solvency appears to have been made at the time to the plaintiffs by the broker. There is no reason to believe that the plaintiffs had any ground for suspicions. The embarrassment of *Rayburn, Scott & Co.* does not appear to have been publicly known. The district judge gave judgment for the plaintiffs ; and the defendants have appealed.

The legal conclusion resulting from the case stated is free from difficulty. In the earliest edition we have found of Mr. Chitty's work on Bills of Exchange, he lays down the law as follows : "When a transfer by delivery, without endorsement, is made merely by way of sale of the bill, as in the case of a discount, or where the assignee expressly agrees to take it in payment, and to run all risks, he has in general no right of action whatever against the assignor, in case the bill turns out to be of no value." "But," adds that author, "there can be no doubt that, if a man were to assign a bill for a good consideration, knowing it to be of no value, he would, in all cases, be compellable to repay the money he had received." More than thirty years afterwards, he reiterates (with a qualification,) the same doctrine : "There can be no doubt that if a man assign a bill for any sufficient consideration, knowing it to be of no value, and the *assignee be not aware of the fact*, the former would in all cases be compellable to repay the money he had received."

Mr. Story recognizes the same doctrine as the commercial law of our own country. He who transfers a note by delivery, "warrants that he has no knowledge of any facts which prove the instrument, if originally valid, to be worthless, either by the failure of the maker, or by its being already paid, or otherwise to have become void or defunct; for any concealment of this nature would be a manifest fraud. Thus, for example, if the instrument be a bank note, and, at the time of the transfer by delivery, the party knows the bank to have become insolvent, and conceals it from the other party, it will be deemed a fraud, and the consideration for the transfer may be recovered back." Story on Notes, § 118. See also *Camedye* v. *Allenby*, 6 B. & C. 373.

This doctrine, which rests upon the firm basis of good faith and mercantile honor, must be taken as the settled rule of the commercial law. We are not aware that it has been disputed since the time of Lord Kenyon, who observed in very strong language, in *Fenn* v. *Harrison* (3 Term Rep. 757) : "If the holder of a bill of exchange sent it into market without endorsing his name upon it, neither morality, nor the laws of this country, would compel him to refund the money for which he had sold it, if he did not know at the time that it was not a good bill; if he knew the bill to be bad, it would be like sending out a counter into circulation to impose upon the world, instead of the current coin."

It is not improper to observe that this principle of the commercial law as to bills and notes, accords with the doctrine of the civil law, as we find it expounded by Pothier. In speaking of the obligations which spring from the good faith required in the contract of sale of a debt, he observes : " La bonne foi oblige le vendeur, dans ce contrat, de même que dans le contrat de vente des choses corporelles, à ne rien dissimuler de tout ce qu'il sait, et de ce que l'acheteur à intérêt de savoir, concernant la créance qu'il vend. C'est pourquoi, s'il était

<small>HEWITT<br>v.<br>WATERMAN.</small>

justifié que le vendeur d'une créance, lors du contrat, avait connaissance que le débiteur était entièrement insolvable ; *putà*, si ce débiteur avait été discuté dans tous ses biens meubles et immeubles, et que le créancier eût fait opposition et n'eut rien touché ; ce créancier, qui, depuis, vendrait sa créance, en dissimulant cette insolvabilité, qu'il ne pouvait ignorer, à l'acheteur qui n'en aurait pas eu connaissance, pecherait contre la bonne foi qui doit régner dans le contrat de vente, et serait obligé, envers l'acheteur, à reprendre la créance, et à lui restituer le prix, quoiqu'il n'y eut pas de clause dans le contrat, par laquelle il se fut obligé à la garantie de fait."

To the like effect is our own Code. The seller does not warrant the solvency of the debtor, unless he has agreed to do so. Art. 2617. But if it be proved that the assignor, who has not warranted the solvency of the debtor, knew, or had strong reasons to suspect, that the debtor was insolvent at the time of the assignment, the contract may be rescinded, and the assignor compelled to restore the price. Art. 2619. *Judgment affirmed.*

NOTE.—The following cases, decided during the period embraced in this volume, presenting only questions of fact, have not been reported.

At NEW ORLEANS : Moreno v. Welman ; Cole v. Poole ; Shaffer v. Green ; Levy v. Forrest ; Martin et al. v. Selleck et al ; Brown v. Featherstonh' et al ; Jordy et al. v. Warfield ; Curry et al. v. Freligh ; Merle v. Bowman ; Montfort v. Gontier ; Meyer v. Speyer ; McLorinan v. Williams ; Yale v. Nolan ; Chanslor v. Stetson ; Talley v. Blanchard ; Rich v. Valentine ; Julien v. Chevet ; Phillips v. Rousseau et al.; Woodruff v. Bailey ; Drummond v. Akin ; Guesnard v. Her Husband ; Oxley et al. v. Waters et al.; Oakey et al. v. Lewis et al ; Castro v. Claiborne et al ; Gorman v. Imboden ; Taylor v. Fitzpatrick ; Davis v. Bondurant ; Anderson v. Peirce ; Owen v. Barker ; Sterry v. Bailey ; Brander et al. v. Smith ; Perkins v. Coons et al ; Larche v. Hood ; Martin v. Amis et al. ; Copley et al. v. Miller ; Watt v. Dunlap ; McCallister v. Gant et al. ; Avart v. Newcomb et al ; Davidson v. Kinchen ; Stephens v. Hackett ; Same v. Same ; Wilkins v. Parish of East Baton Rouge ; Union Bank v. Hardesty ; Harrell v. Kneely et al.; Hyland v. Lambeth et al. ; Riley v. Wilcox ; Gresham v. Fonbené ; Conrey et al. v. McKee et al ; Hebrard v. Curtius et al.; Chiapella v. Lefebvre ; Freeport v. Lacroix et al ; Borgstede et al. v. Mooney ; Ganucheau v. Bach ; Pennock v. Sparrow, Curator ; McKinney v. Steamer Yalla Busha ; Commercial Bank of New Orleans v. Sexé ; Kirwan v. Heath ; Tucker v. Agricultural Bank of Mississippi ; Commissioners of Merchants' Bank v. Yorke ; Succession of Church ; Hardy v. Zacharie et al ; State v. Atchafalaya Railroad and Banking Company ; Ducongé v. Harker ; Beguet v. Videau ; Lee v. Hodge ; Le Blanc v. Lallande ; Bullard et al. v. Lewis et al ; Same v. Same ; Powell v. Kellar ; Sutton v. Hines ; Davezac v. Paulding ; Mitchell et al. v. Mills ; Byrne v. Fonbené et al.; Forman v. St. John ; Frazier et al. v. Denton ; Freeman v. His Creditors ; Burbank et al. v. Lane, Tutor ; Hays et al. v. Noonen ; Randolph et al. v. Tourné ; Vitta v. Brehier ; Succession of Wurzschmitt ; Davis v. McCargo ; Succession of Argote y Villalobos ; Gridley et al. v. Conner ; Pargoud v. Weaver et al ; Robertson et al. v. Thompson ; Peterson et al. v. Hagan et al.; Hiestand v. Forsyth.

AT OPELOUSAS: Fanning *v.* McCaskell; Todd *v.* Saunders, Dartest *v.* Dungan; Walker *v.* Walker; Kemper *v.* Merriman; Fagot *v.* Briant; Broussard *v.* Duhon; Segura *v.* Segura; Deas et al. *v.* Pritchard et al; Moore *v.* Bowles.

AT ALEXANDRIA: Esté, Executor *v.* Boyce; Lynch *v.* Cuny et al.; Same *v.* Same.

AT MONROE: Copley. *v.* Moore; Copley *v.* Dosson; Jones *v.* Holmes; Taylor *v.* Collins; Tutorship of Bonaventure; Copley v. Mullins et al; Atkinson *v.* Johnson; Floyd *v.* Gaster; Thompson et al. *v.* Martin; Gilmer *v.* Craig; Hailey *v.* Pitts et al.; Emsweller *v.* Holland; Jenkins *v.* De Graffenreid, Tutrix; Little *v.* Copley; Dosson *v.* Ward; Slater et al. *v.* Ward; Hill *v.* Head; Thompson *v.* McFarland; Cruger, Syndic *v*, Persons; Canfield *v.* Brice.

---

THE CASES of Hartson *v.* Coleman; Murphy *v.* Wright; Roussel *v.* Wright; Welsh *v.* Barrow; New Orleans and Carrollton Railroad Company *v.* Hood et al.; Riddell *v.* Howard; and Donnell *v.* McMaster, decided at New Orleans, during the period embraced by this volume, are not reported, damages having been allowed in each for a frivolous appeal.