Argued October 15, reversed November 12, 1924.

# G. G. SMITH *v.* MRS. C. G. MILLS.

(230 Pac. 350.)

**Payment—In Absence of Contrary Agreement, "Payment" Means Discharge of Obligation in Money.**

1. In absence of any agreement, either express or clearly implied, "payment" means discharge of debt or obligation in money.

**Payment—Anything of Value Accepted in Discharge of Debt Constitutes Payment.**

2. Anything of value delivered by debtor and accepted by creditor in discharge of debt will constitute payment.

**Payment—Burden is on Debtor to Show Payment.**

3. In action to recover back assigned mortgage and note on ground check given therefor was not good, by reason of failure of bank, burden was on defendant to show that check was accepted in satisfaction of debt, even though check was that of third person, a cashier's check.

**Payment—Whether Acceptance of Check of Third Person Discharges Debt Question of Intention.**

4. In order that acceptance of check of third party, a cashier's check, shall discharge debt, transfer must be by agreement of parties with that intention.

**Payment—There was No Payment Where Agent Gave Cashier's Check of Failing Bank, Instead of Money.**

5. Where purchaser of mortgage and note gave cash to agent to pay purchase price and in her absence agent asked seller whether he wanted money or cashier's check, and, on seller's stating he wanted check, agent purchased cashier's check, and bank failed before check was presented for payment next day, there was no payment for mortgage and note, in absence of agreement that check be accepted as payment.

**Principal and Agent—Principal Could not Rely on Ratification to Charge Third Party on Contract not Before Binding upon Her.**

6. Purchaser of note and mortgage who gave cash to her agent to pay for note and mortgage could not rely upon ratification of agreement between agent and seller to take cashier's check in payment, where ratification did not occur until after check was dishonored by reason of failure of bank.

**Principal and Agent—Where Principal Relies on Act of Agent in Paying Debt With Cashier's Check, Principal Accepts It Along With Agent's Knowledge of Failing Condition of Bank.**

7. Where principal relies on act of high official of bank as agent in paying indebtedness, he having delivered cashier's check instead of money with knowledge that bank was in precarious condition, and bank having failed before check was presented for payment,

principal accepts not only agent's act, but also the imputation to the principal of the agent's knowledge of the bank's condition.

Payment—Cashier's Check Accepted in Payment not Binding upon Acceptor, in Absence of Disclosure of Facts Within Knowledge of Other Party.

8. Cashier's check accepted in payment is not binding upon acceptor, in absence of disclosure of fact within knowledge of payor, or his agent delivering check, of precarious condition of bank.

Evidence—High Bank Officer Presumed to Know of Its Precarious Condition.

9. High bank officer giving cashier's check a few minutes before closing on one day, is presumed to have known bank was in precarious condition, where bank failed to open next morning.

Principal and Agent—Innocent Principal must Bear Loss of Agent's Dereliction.

10. Where principal was innocent, but agent's conduct in converting principal's money into a bad check with which to pay principal's debt caused loss, principal must bear the loss.

From Multnomah: T. E. J. DUFFY, Judge.

Department 2.

The object of this suit is to recover a note and mortgage for the sum of $5,032, in the hands of the defendant, and to enjoin the transfer of the said note and mortgage and the recording thereof.

The complaint alleges that the plaintiff, appellant here, was the owner of a certain note and mortgage executed by R. A. Chapin and Madge D. Chapin, husband and wife, on the tenth day of January, 1922, and due on the tenth day of January, 1925. The mortgage covered certain property in Multnomah County which it is not material here to describe. The complaint charges that the plaintiff sold and assigned this mortgage to the defendant, respondent here, for the sum of $5,032, the face of the note with accrued interest; that he assigned the note and mortgage to the defendant, and that the defendant delivered to plaintiff a check for the amount on a bank in Portland, Oregon, on the fifteenth day of February, 1922; that upon presentation of the check payment was re-

fused, the bank having closed its doors on the 16th of February. The plaintiff alleges that he tendered the return of the check and demanded the return of the note and mortgage, but that the defendant refused to return the note or mortgage or cancel the assignment thereof. The complaint further alleges that the defendant was financially not responsible, and asked for an injunction against the defendant, against selling or transferring the note and mortgage.

The defendant admits the assignment of the securities, and that the plaintiff tendered her a return of the check and demanded a return of the note and mortgage, and that she refused. In a further and separate answer to the amended answer the defendant alleges that on the fifteenth day of February, 1922, the plaintiff agreed to sell and the defendant agreed to purchase from the plaintiff said note and mortgage for the agreed sum of $5,032; that in contemplation of said purchase and prior to the 15th of February she withdrew from her savings account the sum of $5,000 and withdrew $35 on her personal check and offered the said sum to the plaintiff in lawful money of the United States, which he refused, and then and there requested a draft or cashier's check on the State Bank of Portland in his favor; that a cashier's check was accordingly issued by the said bank to plaintiff, as payee, in full payment of said purchase.

It appeared from the evidence that the plaintiff desired to sell the note and mortgage in question and employed one Mr. Bader to find a purchaser therefor and make the sale. Mr. Bader found Mr. Eckhorn, who represented the respondent in the subsequent transaction, and the two agents, in behalf of their

principals, made the contract of sale. On the 14th of February it appears that Mr. Eckhorn, defendant's agent, telephoned her to come to the bank and draw out the money with which to pay for the note and mortgage, which would come in soon. Not being able to come, she authorized him to draw $5,000 from the bank for that purpose. He drew the money, put it in an envelope, and the next day the defendant came in and signed the proper withdrawal slip to evidence her withdrawal of the money from the bank. The amount withdrawn lacked $32 of the purchase price and she drew her check for that amount upon the bank and put it with the $5,000. To corroborate her testimony and that of Mr. Eckhorn as to the withdrawal of the money for the purpose stated, she offered her pass-book and a page of the bank's ledger, and called as her witness an officer of the bank, so that it appears from her evidence, without dispute, that she delivered to her agent the sum of $5,032 in money. On the 15th of February Mr. Bader brought to the bank the note and mortgage and delivered the same to Mr. Eckhorn, and the defendant testified that her agent delivered the note and mortgage to her and that she took them to the collection window in the bank and deposited them, taking a receipt therefor, and that she then went from the bank to keep an engagement with Mr. Robert Strong and did not return to the bank or participate any further in the transaction. She left the bank at twenty minutes past 2 o'clock on that day. After she was gone, Mr. Eckhorn testifies that he asked Mr. Bader whether he wanted the payment in money, draft or check, and that Mr. Bader said he would take a cashier's check, and at the same time, in response to a question by Mr. Eckhorn, told him to make the check payable to

the plaintiff, G. G. Smith. Mr. Eckhorn then went back to a counter and deposited the defendant's money which he had in his possession in the bank, and himself, as vice-president of the bank, which office he then held, drew a check for $5,032, made payable to the plaintiff. Mr. Eckhorn then came back and delivered the check to Mr. Bader, who accepted the same.

The delivery of the check was between half-past 2 o'clock and 3 o'clock, probably about fifteen minutes before 3. The evidence shows that the business hours of the bank were from 10 o'clock in the morning to 3 in the afternoon. Mr. Bader delivered the check to the plaintiff, who, the next morning at about the opening hour of the bank, went to the bank and presented the check but found the bank closed. He presented the check to the receiver and demanded payment, which was refused. He then went with Mr. Bader to the office of Mr. Eckhorn, in the same building, and was told that the bank had closed and that the check would not be paid. He immediately inquired the address of the defendant from Mr. Eckhorn and went to her and offered the return of the cashier's check, informing her that the bank had closed, and demanded the return of the note and mortgage. He testified that she agreed to accede to that demand, but she denies that she did. In any event, within a day or two she announced her decision that she would not return the note and mortgage, and would not pay anything on account of its purchase, claiming that the cashier's check which the plaintiff had received was payment in full of her debt, and that she was released. The next day the plaintiff brought this suit, and it having been dismissed, he appeals.

The question to be determined in this case is whether or not the acceptance of the cashier's check by the plaintiff's agent was a payment of the defendant's debt, or whether it was accepted on condition that it would be honored by the bank. The determination of this question will determine which of the two innocent parties is to bear the loss occasioned by the failure of the bank.                     REVERSED.

For appellant there was a brief over the names of *Mr. G. G. Smith* and *Mr. L. P. Hewitt,* with an oral argument by *Mr. Smith, in pro. per.*

For respondent there was a brief over the names of *Mr. Sidney J. Graham* and *Mr. C. A. Marsch,* with an oral argument by *Mr. Graham.*

PIPES, J.—1. The pleadings of the parties are in accord that the transaction was a sale of the note and mortgage by appellant to respondent in consideration of her promise to pay therefor the sum of $5,032.

The complaint alleges:

"That on the 15th day of February, 1922, the plaintiff sold, assigned and transferred said promissory note by an endorsement thereof to the defendant, and at the same time the plaintiff made an assignment to the defendant of said mortgage for the consideration of five thousand and thirty-two ($5032.00) dollars, and which sum the defendant agreed to pay the plaintiff for said sale and transfer."

The respondent's amended answer alleges:

"That on or about the 15th day of February, 1922, the plaintiff agreed to sell to the defendant and the defendant agreed to purchase from the plaintiff said note and mortgage for the agreed sum of $5032.00."

. This contract called for a payment in money. In the absence of any agreement, either expressed or

clearly implied, payment means the discharge of a debt or obligation in money, and in such case money is the sole medium of payment: 21 R. C. L., p. 9, § 3; *Ibid.*, p. 37 § 34; *Borland* v. *Nevada Bank,* 99 Cal. 89 (33 Pac. 737, 37 Am. St. Rep. 32); *Mansfield* v. *Dameron,* 42 W. Va. 794 (26 S. E. 527, 57 Am. St. Rep. 884); note, 100 Am. St. Rep. 393; *Marine Bank* v. *Chandler,* 27 Ill. 525 (81 Am. Dec. 249); *Graydon* v. *Patterson,* 13 Iowa, 256 (81 Am. Dec. 432, and note); *State Bank* v. *Byrne,* 97 Mich. 178 (56 N. W. 355, 37 Am. St. Rep. 332, and note, 21 L. R. A. 753).

2. But anything of value delivered by the debtor and accepted by the creditor in discharge of the debt will constitute payment: *Tennessee Bond Cases,* 114 U. S. 663 (29 L. Ed. 281, 5 Sup. Ct. Rep. 974, 1098, see, also, Rose's U. S. Notes); *Parker* v. *Carter,* 91 Ark. 162 (120 S. W. 836, 134 Am. St. Rep. 60); *Ryan* v. *Dunlap,* 17 Ill. 40 (63 Am. Dec. 334). In such case it is the distinct agreement of the creditor to accept the thing in discharge of the debt that gives it the character of payment: *Borland* v. *Nevada Bank, supra.*

3. The respondent's contention is that she paid her admitted debt by the delivery to appellant of a cashier's check drawn by the State Bank of Portland for $5,032 in appellant's favor, and by his acceptance of the check in discharge of her debt. The burden is on the respondent to prove payment: *Willis* v. *Holmes,* 28 Or. 265, 268 (42 Pac. 989); *Peterson* v. *Thompson,* 78 Or. 158 (151 Pac. 721, 152 Pac. 497). And since the payment relied upon consists of the acceptance by appellant of the cashier's check in satisfaction of her debt, the burden remains with her to prove such acceptance, in that sense, by evidence or presumption. We have been favored with exhaustive briefs by counsel on the question of the presumption arising

from the acceptance of the paper obligation of third persons in payment of a debt. The appellant's contention is that the acceptance by the appellant of the cashier's check of the State Bank as payment was presumptively conditional upon its being honored by the bank upon its due presentation, and that, the bank failing in the meantime, the debt was not discharged. Among many others, the following authorities will serve as examples: *Matlock* v. *Scheuerman,* 51 Or. 49, 58 (93 Pac. 823, 17 L. R. A. (N. S.) 747, note); *Kiernan* v. *Kratz,* 42 Or. 474, 484 (69 Pac. 1027, 70 Pac. 506); *Johnson* v. *Iankovetz,* 57 Or. 24, 28 (102 Pac. 799, 110 Pac. 398, 29 L. R. A. (N. S.) 709); 71 Cent. L. J. 393; *Seaman* v. *Muir,* 72 Or. 585, 589 (144 Pac. 121); *Riner* v. *S. W. Surety Co.,* 85 Or. 293, 299 (165 Pac. 684, 166 Pac. 952).

On the other hand, the respondent contends that the rule of these cases applies only when the payment is of an antecedent debt, and does not apply where the delivery of the property and the payment are contemporaneous. Some of the cases cited are the following: *Hall* v. *Stevens,* 116 N. Y. 201 (22 N. E. 374, 5 L. R. A. 802); *Gibson* v. *Tobey,* 46 N. Y. 637 (7 Am. Rep. 397); *Loth* v. *Mothner,* 53 Ark. 116 (13 S. W. 594); *Challoner* v. *Boyington,* 83 Wis. 399 (53 N. W. 694); *Gordon* v. *Price,* 32 N. C. 385.

"Effect of transfer, without indorsement, of worthless check, or note of third person," is the title of an extensive note to *Dille* v. *White,* in 10 L. R. A. (N. S.), 510, where the authorities are collated.

4. All of the authorities concur, however, that whatever may be the presumption arising from accepting the paper of a third person, the ultimate question is one of the intention of the parties to the transaction. In order that the acceptance of the cashier's check

shall discharge the debt, the transfer must be by agreement of the parties with that intention: *Dille* v. *White, supra,* and note; *Black* v. *Sippy,* 15 Or. 574 (16 Pac. 418); *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717); *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027, 70 Pac. 506); *Porter and Porter* v. *Talcott,* 1 Cow. (N. Y.) 359, 383.

5. We do not find it necessary to reconcile the conflict, nor to announce a rule as to what the presumption of payment is in cases like those cited by respondent. Considering only the evidence adduced by respondent in support of her plea of payment, we are constrained to hold that she has not brought her case within the rule she contends for. She has not proved that she authorized the delivery of the cashier's check for any purpose, or that she and the appellant agreed with each other that the cashier's check accepted by appellant from her agent should be, or was, delivered by her or accepted by appellant in discharge of her obligation to pay $5,032 for the note and mortgage she received. Her evidence is to the contrary. On the day before the final transaction she authorized Mr. Eckhorn, her agent, to draw from her savings account in the State Bank the sum of $5,000, with which to pay that much on her debt. Following her instructions he immediately drew this money. The next day she drew her check to him for $35 to fill the amount of the purchase price. He put this money in an envelope, and had possession of it, with instructions to pay it to appellant on receipt of the Chapin note and mortgage. He received this note and mortgage from Mr. Bader, appellant's agent, and delivered them to respondent, for she testifies that she deposited them with the bank and took a receipt for them. Then, at twenty minutes

after two, she left the bank to keep an engagement and did not again return or personally participate in the subsequent transaction. It was after she was gone that Mr. Eckhorn, as he testifies as her witness, asked Mr. Bader if he would have the money, or a check or draft, and upon receiving the answer that he would take a cashier's check, went into the bank, and with her money then in his hands, purchased a cashier's check of the bank, payable to appellant, which he himself drew and signed as vice-president of the bank, and delivered it to Mr. Bader, who accepted it. Respondent testifies that she knew nothing about the delivery or acceptance of the cashier's check until the next day at 2 o'clock, some hours after the bank had failed, and the consequent dishonor of the check, and that she supposed until then that appellant had received the money. Therefore, all that Mr. Eckhorn did, in offering the option, in buying the check with her money, in drawing the check as vice-president, and delivering it to Mr. Bader, all after she left the bank, was without her consent and without her knowledge, not according to her intention, and against her instructions. No authority can be implied in her agent not only to go beyond, but contrary to, his authority. Her mind, therefore, did not meet with appellant in the contract she relies upon here to effect her discharge.

6. The element essential to discharge a money obligation by a substituted payment of something else— an agreement of the parties to that effect—is wholly lacking, and the defense of payment fails. The respondent did not accept the act of her agent until after the dishonor of the check and the rights of the parties had become fixed by the bank's failure. She cannot rely upon such a ratification to charge the

appellant on a contract that was not before binding upon her: *Pacific Mill Co.* v. *Inman,* 50 Or. 22, 28 (90 Pac. 1099).

7–9. The defense fails for another reason. The respondent relies upon the act of her agent in paying her debt with a cashier's check. Accepting the agency in respect of the act, she accepts it in respect of her agent's conduct characterizing the act. She accepts the agency in whole and not in part, what part of it is detrimental as well as what is beneficial to her: *McLeod* v. *Despain,* 49 Or. 536, 552 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276); *Porter* v. *O'Donovan,* 65 Or. 1 (130 Pac. 393); *Wilson* v. *McCarthy,* 66 Or. 498 (134 Pac. 1189); *Bridges* v. *Hurlburt,* 91 Or. 262 (178 Pac. 793). Her agent drew the cashier's check as a high officer of the bank within a few minutes of its closing its doors for the last time. The bank being on the verge of failure, he must be presumed to have known, at least, that it was in a precarious condition. Nothing is shown to have happened between the closing hours of that day and the opening hour of the next day to account for the failure. There is no evidence worthy of the name to overcome the presumption of his knowledge. He testified on cross-examination that he would have paid the money, if he had known the bank was going to fail, which is far short of proving a want of knowledge. When he delivered the check to Mr. Bader, the act itself was a representation that the check was good for its face and would be honored: *Hewitt* v. *Waterman,* 3 La. Ann. 716. It was his duty, at that time, to disclose all of the facts that he knew affecting the value of the check. Paper accepted either in payment or for

other consideration is not binding upon the acceptor, in the absence of a disclosure of such facts within the knowledge of the other party: *Snyder* v. *Findley,* 1 N. J. L. 48; *Willson* v. *Foree,* 6 Johns. (N. Y.) 110 (5 Am. Dec. 195); *Pierce* v. *Drake,* 15 Johns. (N. Y.) 475; *Martin* v. *Pennock,* 2 Pa. St. 376; *Hewitt* v. *Waterman,* 3 La. Ann. 716; *Rothmiller* v. *Stein,* 143 N. Y. 581 (38 N. E. 718, 26 L. R. A. 148).

10. Both parties here are innocent. But it was respondent's agent whose conduct caused the loss. He converted her good money into a bad check, with which to pay her debt. Though innocent herself, she must bear the loss of her agent's dereliction: *Fiore* v. *Ladd & Tilton,* 22 Or. 202 (29 Pac. 435); *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302); *Bridges* v. *Hurlburt, supra.*

The decree below must be reversed and appellant's prayer for relief be allowed, and it is so ordered.

REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.