SIDNEY STEVENS IMPLEMENT CO. v. OGDEN CITY

No. 5336.   Decided June 2, 1934.   (33 P. [2d] 181.)

*Stuart P. Dobbs,* of Ogden, for appellant.

*Thatcher & Young,* of Ogden, for respondent.

MOFFAT, Justice.

Ogden City is a city of the second class duly organized and existing pursuant to the laws of the state of Utah. The city, among its general powers, possesses the power to "lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks, airports and public grounds" (Rev. St. Utah 1933, § 15-8-8), and to exercise the right of eminent

domain in behalf of "roads, streets and alleys; and all other public uses for the benefit of" the city or the inhabitants thereof. Rev. St. Utah 1933, § 104-61-1.

On September 12, 1929, pursuant to the powers possessed by Ogden City, the city caused notice to be published of its intention to open, grade, and improve an avenue extending approximately north and south between Twenty-fifth and Twenty-sixth streets, and about one-half block east of and approximately parallel to Washington avenue; and to acquire by purchase or condemnation the ground or rights of way necessary therefor; and to curb, gutter, and pave said avenue, and to make other improvements with respect thereto. The notice of intention also proposed to create a special improvement district, and to defray the cost and expense of such improvements, including the acquisition of the necessary lands, by special tax or assessment to be levied according to the front footage against the lots, pieces, or parcels of land affected or benefited by the proposed improvements and abutting upon the avenue proposed to be opened and improved.

The plaintiff and Frank J. Stevens were the owners of certain of the lands included in and affected by the improvement, and in order to effect the proposed improvement it was necessary that the city acquire the lands of plaintiff and others included within the boundaries of the proposed Ogden avenue.

For the purpose of determining the value of the lands to be acquired by the city for the purpose of opening the avenue, appraisers were named by the property owners affected by and interested in the improvement to ascertain and determine the damages which would accrue to the respective property owners by reason of the taking of the lands, and also such damages as might be caused to the property damaged but not taken.

The appraisers fixed the amount of damages which would be sustained by the plaintiff, Sidney Stevens Implement

Company, in the sum of $8,850.60, and the amount of damages which would be sustained by Frank J. Stevens in the sum of $828. The claim of Frank J. Stevens has been assigned to the plaintiff.

Deeds, bearing date the 26th day of September, 1929, and naming Ogden City as grantee, conveying to the city title to the portion of the property theretofore owned by the plaintiff and Frank J. Stevens, and included within the boundaries of Ogden avenue were executed and delivered to A. P. Bigelow, who was an active member of a committee of property owners on the avenue. These deeds, with other deeds to the lands making up the tract of land composing the avenue, were by A. P. Bigelow delivered to the city, and by or on its behalf were filed for record on the 5th day of December, 1929. The consideration stated in the deed of plaintiff was $8,850.60, "to be hereafter paid."

The total sum fixed by the appraisers as damages for the taking of the lands embraced within the described boundaries of the avenue was $43,977.26. Payment of the sums fixed by the appraisers to each of the respective owners of the lands covered by the deeds has been made in bonds of the improvement district, except for the property of one Catherine Richey, Frank J. Stevens, and the plaintiff.

Catherine Richey refused to convey upon the terms of the appraisement. Condemnation proceedings were instituted by the city. Settlement was made before judgment, and Catherine Richiey received payment in legal tender.

At no time prior to the delivery of the deeds to the city, and the acceptance of them by the city, did the plaintiff or Frank J. Stevens advise the city that they or either of them expected to be paid the consideration, fixed by the appraisers and recited in the deeds, in lawful money of the United States, or otherwise, nor did the city until some time after the delivery and recording of the deeds, and for that matter not until payment was demanded, notify plaintiff or Frank J. Stevens that it would not pay in lawful money, or that it

expected to make payment in bonds only. Nor was there any express contract between the parties thereto or Frank J. Stevens with respect to the medium of payment. Had the plaintiff or Frank J. Stevens been advised that the city intended to make pament for the taking of the lands and damages, before the making of the deeds, in bonds of the special improvement district, they and each of them would have refused to convey. The plaintiff and Frank J. Stevens were not advised until after the city had taken possession of the land and torn down the improvements, and constructed the cement roadway and made the other special improvements to the avenue, and the bonds were issued that the city intended to pay in bonds and not in legal tender.

The foregoing facts are all stipulated and constitute a summary of the findings made by the trial court. Those facts and others contained in the findings relating to the passage of the necessary and proper ordinance relating to the special improvement district of the city are not questioned, nor may they be, as no transcript or bill of exceptions is a part of the record; the appeal being on the judgment roll alone. This court is therefore bound by the findings of the trial court; in fact, the findings are stipulated and not questioned. This is conceded to be the situation by the parties to the action.

Broadly speaking, the only question here for review is: Do the findings support the conclusions of law and the judgment? More narrowly and as submitted by appellant the question in substantially appellant's own language is: Was there created between the appellant and its assignor and the city an implied contract, "that the city would pay the amounts so allowed by such appraisers, and stated in such deeds as consideration thereof, in legal tender of the United States of America"?

We think the conclusions of law and judgment as found and made by the trial court find support in the findings. Appellant argues that its demurrer, which was both general

and special, should have been sustained. While the demurrer contains an attack, special as to indefiniteness and uncertainty as to both causes of action, the specified indefiniteness and uncertainty go only to the main question as to whether the alleged claim of plaintiff was payable in "special improvement bonds" or "lawful money." If, as a matter of law applied to the admitted facts, the claim of plaintiff was payable in money or legal tender, all other questions are subsidiary and become immaterial, with the possible exception of the assignment of error raising the question of the statute of limitations.

From the findings made by the court, the arguments and briefs of counsel, and the necessary and irresistible inferences to be drawn therefrom, there is and can be no dispute about the proposition that there is or was due to the plaintiff as payment for the conveyances made to the city the sums found and for which judgment was entered by the trial court. The city tenders as payment of the claim bonds when taken at the face value and when added to a small cash amount are sufficient to equal the amount claimed. The plaintiff and appellant refuses to accept the bonds, and demands payment in legal tender.

In support of appellant's position counsel cites certain sections of the statutes and cases dealing with problems of the powers of the governing bodies of cities, procedure as to special assessments, contracts for special improvements, the issuance of bonds and warrants against the particular funds created, and the collection, limitations, and application of the special funds so created. The ordinances of the city relating to the above matters are set out in full in the exhibits attached to the pleadings and by reference incorporated into the findings, as is likewise the ordinance relating to the notice of intention to make the improvement out of which this litigation arose.

No question is raised as to the validity of the ordinances, or the regularity of the procedure. Some questions as to

notice and estoppel arising therefrom[1] are referred to, but as we understand the positions of the parties such matters are not regarded as controlling and the ordinances will not be further referred to.

We shall first examine the statutes which counsel for appellant maintains support the position taken by appellant. There are six sections of the statutes which it is maintained by counsel have a bearing upon the question. They are: Section 673, Comp. Laws Utah 1917, as amended Laws of Utah 1921, c. 15, p. 59, as amended and revised by R. S. Utah 1933, § 15-7-21; section 675, Comp. Laws Utah 1917, modified by section 15-7-24, R. S. Utah 1933; section 676, Comp. Laws Utah 1917, as amended by Laws of Utah 1921, c. 15, p. 60, as amended by Laws of 1931, c. 25, p. 46, as further amended and revised by section 15-7-23, R. S. Utah 1933; section 695, Comp. Laws Utah 1917, amended by Laws of Utah 1921, c. 15, pp. 59, 62, now found at section 15-7-44, R. S. Utah 1933; section 746, Comp. Laws Utah 1917, amended by Laws of Utah 1921, c. 15, p. 64, now found as section 15-7-62, R. S. Utah 1933; and section 748, Comp. Laws Utah 1917, amended by Laws of Utah 1921, c. 16, p. 64, now found as section 15-7-63, R. S. Utah 1933. While the foregoing sections of the statutes have been amended, and verbal changes made, some additions and omissions of words or phrases as they now appear in the R. S. Utah 1933 are observed, none of such changes affect in any way the question under consideration in the instant case.

Such parts of the sections as are pertinent to the inquiry before us, and for convenience are quoted with reference only to the sections found in the 1933 Revisions of the Statutes:

Section 15-7-21: "The board of commissioners or city council of cities and the board of trustees of towns may establish grades and lay out, establish, open, extend and widen any street or alley, and improve, repair, light, grade, pave, curb and gutter, sewer, drain, park and beautify the same; may construct bridges, sidewalks, crosswalks, and driveways from curb to property line, culverts, lighting

equipment, sewers and drains; may plant or cause to be planted, set out, cultivated and maintained lawns and shade trees in parking spaces; and may maintain, replace or renew any of such improvements."

Section 15-7-23: "The assessment of special taxes for *special* improvements shall be made as follows: That part of the cost of engineering, inspection, publishing and mailing notices, making the tax levy, and any incidental costs upon any such improvement above ten per cent of *the contract price* of such improvement shall be paid out of the general funds of the city or town. The total cost of the improvement, which shall include the interest on interim warrants and *the total contract price* (to be paid the contractor), plus an amount equal to but not exceeding ten per cent thereof to cover the actual cost of engineering, inspection, publishing and mailing notices and making the levy, shall be levied at one time upon the property, and shall become due in not more than ten equal annual installments as may be provided in the ordinance levying the tax. * * *" (Italics and parenthetical expression added.)

Section 15-7-24: "The cost of paving macadamizing or repaving of the streets and alleys within any paving district, except the intersection of streets and space opposite alleys within such district, shall be assessed upon the lots and lands abutting upon the streets and alleys in such district."

Section 15-7-44: "Special taxes may be levied as the improvements are completed in front of or along or upon any block or lot, or part thereof, or pieces of ground, or at the time the improvement is entirely completed, or when light service or park maintenance is commenced, as shall be provided in the ordinance levying the tax; provided, that before any special tax for special improvements shall be levied *the cost of such improvements* in the improvement district, or part thereof, named in the notice of intention to make such improvement *shall be ascertained by contract duly let to the lowest responsible bidder*, for the kind of service or material or form of construction which may be determined upon, after publication of twenty days' notice to contractors in the manner provided for publication of notice of intention to make such improvements. Such notice may be published simultaneously with the notice of intention, and the cost of such improvement shall not exceed to the property owner his proportion of *the total cost of the improvement determined as provided in section 15-7-23*. Where any improvement in any extension varies as to character, width, extent or otherwise the property fronting, abutting upon or adjacent to the street improved may be assessed at varying rates in accordance with the character, width or extent of the improvement upon that portion of the street immediately abutting the

property. There may be included in any contract for work in such district any one or more of the improvements in this article provided for. Where assessment is levied for the cost of opening, widening or extending streets or alleys the purchase or condemnation price of the land shall be deemed the *contract price*, and notice to contractors may be dispensed with. The board of commissioners, city council or board of town trustees may, from time to time as work proceeds in any improvement district pursuant to contract duly entered into, issue to the contractor interim warrants against the improvement district for not to exceed ninety per cent in value of the work theretofore done upon estimates of the city or town engineer, which warrants shall bear interest at the rate of six per cent per annum from date of issue until fifteen days after levy of assessment. The interest accruing on such warrants shall be included in the cost of the improvement. Such interim warrants and interest shall be taken up and paid by special improvement warrants or special improvement bonds issued upon completion of the work." (Italics added.)

That "the cost of such improvements   *   *   *   shall be ascertained by contract duly let to the lowest responsible bidder," refers to the cost of construction, materials and labor to be furnished and paid for by the contractor in the course of construction, plus the 10% for engineering, costs of levy, etc., referred to in the first part of section 15-7-44, supra, and especially when read in connection with the statement that "the cost of such improvement shall not exceed to the property owner his proportion of the total cost of the improvement determined as provided in section 15-7-23," does not leave the matter in doubt that the total contract price is so limited. It seems likewise settled by the statute that *"the contract price"* referred to in the latter part of section 15-7-44, supra, refers only to the price to be paid for the property, and is for the purpose of obviating the necessity of publishing notice relating to this particular kind of contract, viz., contracts of "purchase or condemnation price of land," as required generally by section 15-7-20, R. S. Utah 1933.

Section 15-7-62: "In any instance where a city or town may levy a special tax or assessment for the purpose of making or paying for any local improvement the city auditor  *  *  *  upon being so directed by

the governing body shall * * * issue warrants or bonds in payment of the cost and expense of such local improvements against the funds created by such special tax levy or assessments. * * * Such warrants or bonds shall be issued to the contractor doing the work in any such improvement district for the full amount of *the contract price* due at the time of their issuance, including any interest on interim warrants which may have been issued to him, and to the city or town in which such work is done and by which such bonds are issued for an amount not exceeding ten per cent of such *contract price* to cover the cost of levying, engineering, inspecting, publishing notices and other expenses incident thereto; *provided,* that in the case of purchase or condemnation of property for the purpose of opening, extending or widening streets such warrants or bonds may be sold by the city or town and the proceeds thereof used to pay for such property, or they may be issued direct in payment for such property." (Italics added.)

Section 15-7-63: "No city or town shall be held liable for the payment of any special tax bond or warrant, except to the extent of the funds created and received by special tax levies or assessments and to the extent of its special improvement guaranty fund; but the city or town shall be held responsible for the lawful levy for all special taxes or assessments for the creation and maintenance of the special improvement guaranty fund as provided by law, and for faithful accounting, collection, settlement and payments of the taxes levied for local improvements and for the moneys of said funds."

The special improvement guaranty fund is provided for out of general tax levy redemption funds and sale of property forfeited for special taxes, etc.

The appellant, Ogden City, contends that under these sections of the statute the Legislature either by direct language or by necessary implication has so fixed the powers and duties of cities with reference to special improvement districts and the work that may be done, the manner of payment, and other matters referred to not necessary to discuss herein, that no implied contract could arise to make payment for any lands taken other than by payment as contended by the city in special assessment bonds or warrants, and submits (1) that the city not only did not, but that it could not, enter into a contract, express or im-

plied, for the purchase of lands for legal tender, and (2) that the city had elected to make the improvement under the powers given it to create special improvement districts, it could not depart therefrom and make a part chargeable to the public generally, but must pay from the funds of the special improvement district, in the manner provided by law for the payment for local improvements out of the funds, and such funds only as accrue to the special tax funds from the special improvement district.

It is scarcely necessary to discuss the first proposition submitted. The statutes in unmistakable terms directly confer such powers. Section 15-7-1, R. S. Utah 1933, provides that cities and towns may "make contracts and acquire and hold real and personal property for corporate purposes." The right of eminent domain is expressly vested in cities and may be exercised in behalf of opening, widening, or otherwise improving streets, roads, and alleys; "and all other public uses for the benefit of any county, city or incorporated town, or the inhabitants thereof." Section 104-61-1, R. S. Utah 1933. And, "Nothing in this code must be construed to abrogate or repeal any statute providing for the taking of property in any city or town for street purposes." Section 104-61-19, R. S. Utah 1933.

These sections in connection with section 15-7-21, supra, put the question of the power of the city to acquire property for street purposes or other public purposes beyond question. Having the power to acquire the property by the exercise of the right of eminent domain for the purposes for which the property was acquired in the instant case of necessity carries with it the power to acquire the property by contract. It would be an unreasonable position to assume that the method authorized by statute in the exercise of eminent domain was exclusive. When bargain and sale or failure to agree upon values as to a given piece of property fail, then a city may resort to the right of eminent domain. In many if not in most instances as a practical matter the appraise-

ment method or the method of direct negotiation as to values is the more satisfactory. An owner of property, knowing that his property is subject to condemnation for public uses, will usually be more inclined to agree as to price than require a resort to legal processes in the courts. We are of the opinion appellant's first point is untenable.

The second question submits a different problem. It is maintained that the appellant, Ogden City, elected to proceed to make the improvement under the statute relating to the creation of a special improvement district, and, having so elected, that the cost of the improvement must be regarded as a unit, and rights of way as well as material and labor of construction are all included in what is referred to in the statute as *the contract price*, and payment therefor must be provided out of special assessment funds and that the plaintiff, in the option of the city, may be required to accept special improvement bonds or nothing.

Under a city's general powers, authority is given to "lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards * * *" (Section 15-8-8, R. S. 1933), and by section 15-7-22 and section 15-7-24 authority is given to levy a special assessment to pay for street paving or to pay out of the general fund of the city. *Booth* v. *Midvale City*, 55 Utah, 220, 184 P. 799. It is therefore well settled that cities may either under their general powers and out of their general funds, or by the method of special improvement district proceedings, lay out, establish, open, alter, widen, narrow, extend, grade, pave, or otherwise improve streets.

Counsel contends that the city may not pay out of its general funds the cost of the purchasing of lands to be included in the opening of a street, when the city by ordinance has created a special improvement district, and that when such has been done the method of payment by special assessment bonds or warrants is exclusive. We think the position is untenable. In the very nature of things unless the title or

right of way has been secured before the construction work has begun, the city is faced with the necessity of condemning the necessary property or securing it by agreement. Because the city chooses to pass an ordinance either before or after the question of title has arisen unless the owner agrees to accept special assessment bonds or warrants, such owner may not be deprived of his right to be paid in legal tender by the passage of a city ordinance. Nor do we think the statutes will bear such construction. Such construction is an attempt to read into the statute and ordinances a construction that would make this class of obligations or debts payable at the option of the city, the debtor, in something else than legal tender. This may not be done. *Capital Grain & Feed Co.* v. *Federal Reserve Bank* (D. C.) 3 F. (2d) 614.

The cost of opening, widening, and extending streets or alleys may be general as distinguished from a special improvement. In the chapter relating to special taxes and special improvements it is provided that the cost and expense of such improvements may be levied and collected by special taxes and assessments upon abutting or adjacent property. This may include the opening, extending, and establishing of streets and alleys. The same sections, however, provide for the creation of improvement districts, and the making of contracts for the materials and service for such improvements. It is also provided that ordinary repairs, and one-half the cost of bringing streets or alleys to established grade, shall be paid by the city. Section 15-7-22, supra.

Manifestly the contract for the making of such improvements in such districts cannot refer to the cost and expense of purchasing lands upon which the improvement is to be made, since such interpretation would require the bidding contractor to include the land cost in his bid and be paid therefor and settle with the landowner.

Again, section 15-7-23 provides that the cost of engineering, making the tax levy and incidental costs of the improve-

ment above 10 per cent of the contract price of the improvement, shall be paid out of the general fund, and that the total *contract price* plus not to exceed 10 per cent of the *contract price* may be included in the levy. This would seem to limit the items and amounts that should be included in the *contract price*. The cost of engineering, inspection, levy of the tax, etc., provided to be paid out of the general funds of the city, are to be repaid to the city's general fund by the 10 per cent of the bonds and warrants of the special improvement district out of the proceeds from the sale of such bonds or warrants.

It may be noted also that, "the cost of paving, macadamizing or repaving of the streets and alleys within any paving district, except the intersection of streets and space opposite alleys within such district, shall be assessed upon the lots and lands abutting upon the streets and alleys in such district." Section 15-7-24. No mention is made in this section of assessing abutting property for the purpose of opening streets. It is therefore necessary to view more than one section to gather the real intent and purpose of the statute. Section 15-7-34, providing for the issuance of "District Paving Bonds," contains provisions similar to those found in section 15-7-24, supra.

We are now brought to the latter part of section 15-7-62, supra. This section is included with others in a chapter relating to "Special Tax Funds." It is provided that the bonds and warrants authorized to be issued against the "Special Tax Funds" in payment for the special improvement within an improvement district shall be dated and draw interest from the date on which the special tax bears interest. That such warrants or bonds shall be issued to the contractor doing the work for the full amount of the contract price due at the time of their issuance. There shall be included therein sufficient to cover all interest accrued upon any interim warrants that may have been issued to the contractor as the work progressed. Again, to say that the *contract price*

referred to and included the total cost of the improvement wherever used would require a complicated sort of arrange-- ment, such as would require an issuance of bonds to the contractor, and such amount as should be due the landowner. then passed on to him. Such construction is thoroughly literal. The further provisions, however, render such a construction untenable, as it is further provided that the city may issue to itself such bonds for an amount not exceeding 10 per cent of the *contract price.* to cover the cost of advertising, notices, engineering, inspecting, and other expenses incident thereto. There is then added to the section under consideration a provision providing "that in case of purchase or condemnation of property for the purpose of open-in, extending or widening streets," special tax fund bonds and warrants may be sold by the city and the proceeds from such sale may be used to pay for the property purchased or condemned. This provision would again seem to indicate that the city may sell special tax fund bonds or warrants for the purpose of paying for the necessary property acquired in extending, opening, or widening streets. This same section then at its close contains the following clause: "Or they (the special tax fund bonds) may be issued direct in payment for such property."

As we understand appellant's position, it is that under this last provision, the city may require the property owner whose property is "purchased or condemned" to accept bonds in payment or be precluded recovery. Under the statute relating to the exercise of eminent domain whereby cities may condemn private property for the specified uses, it would appear that the statute contemplates that payment for property thus taken should be paid for in money. Section 104-61-15, R. S. Utah 1933, provides:

"Payment may be made to the defendants entitled thereto, or the money may be deposited in court for the defendants and distributed to those entitled thereto. If the money is not so paid or deposited, the defendants may have execution as in civil cases; and if the money cannot be made on execution, the court upon a showing to that effect

must set aside and annul the entire proceedings, and restore posses-
sion of the property to the defendants, if possession has been taken
by the plaintiff."

We think the position taken by the appellant that the
closing clause of section 15-7-62, supra, vests in the city the
option to require the landowner to accept bonds in payment
for land either purchased or condemned is untenable.
*Smith* v. *Mills,* 112 Or. 496, 230 P. 350 and cases cited.
Counsel has cited no case that would warrant such a
construction, and respondent maintains that the construc-
tion contended for by appellant would render that part of
the section unconstitutional, and submits authorities there-
for. In view of the position taken, we cannot adopt appel-
lant's construction, and any other construction that might
be placed upon the statute would be only discussing a moot
question and needs no further consideration.

Appellant cites a number of cases in which contractors or
others have accepted special assessment bonds or warrants,
and upon failure of the city to collect sufficient to meet the
payments on the outstanding bonds or warrants have sought
to charge the city with a general liability. The cases seem
to establish the doctrine that when warrants or bonds have
been issued against a special assessment fund, a city may
not, the city having exercised reasonable diligence to collect,
be charged with a general liability. Some of the cases go
to the extent of holding that the bondholder's only recourse
is to the special assessment fund. We have no such case be-
fore us. Plaintiff, respondent here, has not accepted the
bonds; is refusing to accept them, and maintains a contract
of purchase creating a general liability, in liquidation of
which it may not be coerced by the city into accepting special
assessment warrants or bonds.

The case of *Seavey* v. *City of Seattle,* 17 Wash. 361, 49 P.
517, a Washington case, in some of its features is analogous
to the instant case. We think, however, it is distinguishable
upon the facts, and in addition thereto the statutes of our

state are quite different from those of the Washington jurisdiction at the time the case was decided in 1897. In that case it appears that there was an award for damages made by appraisers in 1889. That no action was taken until 1896. In stating the case, that court said:

"There was no showing in support of the motion for judgment, aside from the record of the proceedings, which included the ordinance passed for widening the street, condemning the necessary property therefor, and assessing the cost upon the .property benefited, the report of the appraisers, a map of the property where the improvement was located, and the assessment roll required by the ordinance."

The court then says:

"We are of the opinion that the showing was insufficient to sustain the judgment. There was no attempt to show that the city had any money on hand which it had collected upon the property assessed."

After referring to and commenting upon a number of cases, which cases do not discuss the particular issues involved in the instant case, the Washington court further says:

"If the plaintiff was not content with the manner of payment provided and her right to compel its enforcement, she should have insisted upon payment before surrendering possession of her land, if she has surrendered it. To have entitled her to this judgment there should have been a showing at least that she had resorted to some means to compel the city officers to collect the assessments, that they had failed to do so, and that the further right to prosecute the collection had become lost; or, in the alternative, there should have been a showing that the city had actually collected the money upon the assessments, and that there was a sufficient balance to satisfy her claim."

Had plaintiff in the instant case either accepted bonds or warrants, or had agreed to accept bonds or warrants, or by acts or conduct had worked an estoppel against the right to refuse acceptance of bonds or warrants payable out of a special tax fund, a different situation would have been presented. The trial court found that there was an implied contract of purchase, and that the consideration for the

payment under the implied contract for the conveyance of the property was payable in legal tender.

We find no error in the court's findings, and think the findings support the conclusions of law and judgment. It is not necessary to discuss the question of presentation of the claim, or the time such claim was presented. Appellant admits the claim and offers payment, but selects the medium of payment which respondent refuses to accept.

The judgment of the trial court is affirmed. The respondent is entitled to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.